[No. 3980.   Decided November 25, 1901.]

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES SMITH *et al., Appellants.*

CRIMINAL LAW — INCOMPETENCY OF PROSECUTING WITNESS.

On an appeal in a criminal case, the testimony of the prosecuting witness cannot be considered, where the record shows that on the same day the verdict was returned he was duly adjudged to be an insane person, since the presumption arises that he was in the same condition on the witness stand and therefore incompetent as a witness.

ROBBERY — EVIDENCE — DECLARATIONS AS RES GESTAE.

The declaration of a person alleged to have been robbed, made almost immediately after the time of the alleged offense, is competent as a part of the *res gestae.*

Appeal from Superior Court, Skagit County.—Hon. GEORGE A. JOINER, Judge. Affirmed.

*J. C. Waugh,* for appellants.

*M. P. Hurd,* Prosecuting Attorney, for the State.

The opinion of the court was delivered by

HADLEY, J.—Appellants were jointly charged with the crime of robbery, alleged to have been committed by forcibly and feloniously taking from the person of one Olsen $14 in lawful money of the United States. A trial was

had, resulting in a verdict of guilty as to both defendants. A motion for new trial interposed by appellants was overruled, and judgment was thereafter entered upon the verdict of the jury, by the terms of which the appellants were each sentenced to serve terms in the state penitentiary; the term of appellant Smith being three years, and that of Keyes being two years and six months.

It is assigned as error that the court denied the motion for a new trial. At the time of the trial the prosecuting witness, Olsen, to the surprise of both the state and defense, appeared to be in a state of mental collapse. His testimony, as appears by the record, is of no value whatever as being in support of the facts alleged in the information. He was unable to identify either of the appellants with any degree of certainty as being persons he had ever seen before. He was not able to testify that a robbery had been committed. The following appears in the record of his direct examination:

"Question. Did you have some money taken away from you over there, Edward? Answer. I don't know. It may be. I guess I had some money in my pocket. I spent it. Q. Do you remember how much money you had? A. No, I don't remember. I think it was somewhere around fifty cents, or something like that. Q. The money was all gone? A. I believe so."

The record shows that on the same day the verdict of the jury was returned the prosecuting witness was duly adjudged to be an insane person, and was committed to the asylum for the insane. It is manifest, therefore, that he was laboring under the same disability when he was upon the witness stand, and he was for that reason an incompetent witness. His testimony must therefore be entirely eliminated.

The state introduced another witness,—one Winkler,—who testified that on the day of the alleged crime he was

employed as a section foreman on the line of the Seattle & International railroad; that Olsen came along the track where the witness was in charge of his men, and told the witness that he had been drinking with two men the night before, and he was afraid they would take his money; that Olsen described the appearance of the men, and then said he was going over to a little house, which stood some seven hundred feet from the track, where he wanted to sleep, for a time, and asked the witness not to let any one know he was there; that a few minutes afterwards two men came along the railway track, whose appearance corresponded with the description given by Olsen, and the witness identified the appellants as being the same men; that they stopped, and talked with the witness, and then moved on down the railroad; that a few minutes after these men left Olsen came out of the little house aforesaid, he being bareheaded, and in his stocking feet; that his head was swollen, and stained with blood, and black marks appeared upon his throat and face; that Olsen then said, "The tall man got my head between his legs and the other hit me on the head." The witness thinks ten or fifteen minutes had elapsed between the time the men left and the time Olsen came out to him as above stated. The witness at once looked down the railroad track, where he could see for a distance of two miles, but did not see appellants. He then discovered and followed the tracks of two men for a distance of about five hundred feet along the county road and thence by a "skid road" to the little house where Olsen had been. The witness observed that one of the appellants wore heavy shoes and the other light shoes, and the tracks he followed were made by one person wearing heavy shoes and by one wearing light shoes. The above is a substantial statement of the testimony as to circumstances which may be said to connect appellants with the

alleged robbery. If the testimony of the prosecuting wit-
ness could be held to be competent, he was unable, as above
stated, to testify that a robbery had been in fact commit-
ted. The following evidence upon that point appears in
the record of the witness Winkler's testimony:

"Question. Do you know whether or not Ed. Olsen
reported at that time what money he lost? Answer. No,
sir; he did not report to me what he lost. He said they
took all he had. When he went in there he showed me
his money. He had $7.50 in one pocket and in the other
pocket he pulled out a stocking with some money in it;
but I do not know how much was in there."

The record does not disclose that any objection was
made to said question, or that any motion was made to
strike the answer. Should it be urged that the said evi-
dence was hearsay, still it is in the record, and went to the
jury without objection. It is true, at the close of the
state's evidence the appellants' counsel asked the court to
instruct the jury to find a verdict of not guilty, on the
ground that there was not sufficient evidence to go to the
jury; but the request amounted to a general challenge of
all the state's evidence, and did not demand the elimina-
tion of any particular portions by reason of incompetency
or immateriality. But, aside from this question, we be-
lieve the evidence was competent as a part of the *res
gestae* of the alleged crime. The statement of the person
alleged to have been robbed was made almost immediately
after the time of the alleged offense. Declarations of the
person robbed, when of the *res gestae,* are admissible in
evidence. 2 Bishop, New Criminal Procedure, § 1007a 1.
*State v. Ah Loi,* 5 Nev. 99; *Rex v Wink,* 6 Car. & P.
397.

In the last case cited—an English case—the declaration
was made some hours after the commission of the robbery.

It may be urged that, because of the manifestly irresponsible condition of the prosecuting witness at the time of the trial, his declaration so made should not be considered. But we find from the record that the date of the crime as charged was December 21, 1900, and the date of the trial was February 23, 1901, more than two months having elapsed meanwhile. There is nothing in the record to indicate that the prosecuting witness was not entirely sane and responsible at the time the declaration was made. We therefore think that the record shows this evidence to be competent, and, the jury having found the appellants guilty, we will not disturb the verdict.

The judgment is affirmed.

REAVIS, C. J., and FULLERTON, DUNBAR, WHITE, MOUNT and ANDERS, JJ., concur.