### York et al. v. City of Hazard et al.

Nov. 20, 1945.

Ward & Ward for appellants.

Craft & Stanfill for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Reversing.

Stanley York, an employee of the City of Hazard, was assaulted and killed by a fellow employee on February 26, 1944. He left a widow and two infant children. On March 30, 1944, the widow, for herself and children, made application to the Workmen's Compensation Board for an award under the Workmen's Compensation Act, KRS 342.001 et seq., and after proof was taken a referee of the board dismissed the application for adjustment of claim on the ground that York's death was not caused by an injury arising out of his employment. On full board review the finding of the referee was approved, and the claim was dismissed. A petition for review was filed in the Perry circuit court, where the award of the board was affirmed. The sole question presented by this appeal is whether or not the injury which caused the death of York arose out of his employment.

Stanley York and Charlie Eldridge had been members of the street cleaning crew of the City of Hazard for several months prior to the day on which York was killed. On the day in question York and Eldridge, with three other employees of the City, were engaged in cleaning the streets under the direction of Jason Spicer, street supervisor. A truck was being used to haul away

the dirt and other material collected from the streets. Each of the workmen was using a pick and shovel. The crew began work at 7 o'clock in the morning and between 10 and 11 o'clock the truck was driven to a point in Walkertown, where it was to be unloaded. Whether Walkertown is within the corporate limits of Hazard or is a suburb does not appear. Stanley York, Charlie Eldridge, and J. M. Hays rode on the bed of the truck and Jason Spicer and Howard Stacy rode in the cab with Lewis Tyree, the driver. The killing occurred immediately after the truck stopped at the place where it was to be unloaded. Spicer testified that as he got out of the cab Howard Stacy said: "Some of them are going to fight." The witness stepped from in front of the truck and saw Eldridge strike York on the head with a shovel. They were behind the truck on the edge of the pavement. Eldridge got off the truck with a shovel in his hand, but York had nothing in his hand when he was struck. Spicer took York to the hospital where he died without regaining consciousness. Spicer stated that York and Eldridge had been working in his crew for about three weeks, and as far as he knew they had never quarreled. Just before his attention was called to the trouble, he heard someone say: "You can't talk that way to me." J. M. Hays testified that when the truck stopped he got off on the righthand side and York and Eldridge got off on the lefthand side. He never heard a word until York walked around the truck and Eldridge walked out a little way and said: "You can't talk to me that way." York was standing on the sidewalk and Eldridge raised the shovel and hit him. They had no argument while they were in the truck, and apparently had been on friendly terms during the day. York had nothing in his hand, had just stepped on the pavement, and was "looking off" when Eldridge hit him with the shovel. Eldridge was indicted and tried for murder, and was convicted of manslaughter and sentenced to five years' imprisonment. His deposition was taken in the prison at LaGrange. He testified that he and York had been working together for the City for three or four months, and had never had trouble of any kind prior to the occasion in question. When the truck stopped he jumped off with a shovel in his hand and reached back to get another shovel, and as he drew it to him it tipped York under the chin. According to the witness York became

enraged, cursed him, called him a vile name, and attacked him with a shovel. He told York that he did not intend to hit him and that it was an accident but York continued to follow him with a shovel and struck at him and he hit York in self-defense.

The injury which caused York's death was received in the course of his employment, and the only question to be determined is: Did it arise out of his employment? In Kentucky Fluorspar Co. v. Wolford, 263 Ky. 471, 92 S. W. 2d 753, 754, this court, after citing several cases, said:

"The rule deducible from these and other cases that might be cited is that compensation will be granted for injuries due to an assault by a fellow employee where they are fairly traceable to an incident of the employment, and will be denied where they are the result of personal grievances unconnected in any way with the employment."

In Schultz v. Chevrolet Motor Co., 256 Mich. 393, 239 N. W. 894, 895, Schultz and another employee of the motor company were engaged in unloading bundles from a truck, and the fellow employee became enraged because he was struck by a bundle tossed by Schultz and struck Schultz with a stake, fracturing his skull. In affirming an award of compensation, the court said:

"In the instant case, there was causal relation between the employment and the assault. It was an act in the course of the work that provoked the assault, and the record is clear that the injuries inflicted were occasioned by anger over an act at that very time committed in the conduct of the work."

The following from the opinion in Pekin Cooperage Co. v. Industrial Commission, 285 Ill. 31, 120 N. E. 530, was quoted with approval:

" 'Where men are working together at the same work disagreements may be expected to arise about the work, the manner of doing it, as to the use of tools, interference with one another, and many other details which may be trifling or important. Infirmity of temper, or worse, may be expected, and occasionally blows and fighting. Where the disagreement arises out of the employer's work in which two men are engaged, and as a result

of it one injures the other, it may be inferred that the injury arose out of the employment.' ''

The referee in the present case based his award on his conclusion that there were no facts from which it could be inferred that the difficulty had any connection with York's employment. He disregarded Eldridge's testimony as to facts that would constitute self-defense, and we think properly so, on the ground that his testimony was refuted by the physical facts. On this point he said in his opinion:

"Eldridge does not undertake to explain just how he could retreat the distance from the truck, over the sidewalk and dirt piled there and on to the river bank, strike York on the head and knock him under the truck standing on the street and on the side opposite to where Eldridge was located."

Further along in his opinion he said:

"It is inconceivable that two friends such as Eldridge and York, as testified by Eldridge, could have reached such an extremity to take a life without any more provocation than is shown herein and we cannot bring ourselves to believe the unfortunate affair had any connection with the employment of deceased and certainly it was not within the scope of it."

It was the referee's conclusion, which was concurred in by the full board, that the difficulty arose out of previously existing enmity between the two men which had no connection with their employment. There was no evidence warranting such an inference. On the other hand, the only reasonable inference from the evidence is that something happened at the time York and Eldridge got off the truck which precipitated the difficulty. In view of their past friendship, it was necessarily connected with the employment and did not result from personal grievances unconnected therewith. Two witnesses heard Eldridge say just before he struck York: "You cannot talk to me that way." It is a reasonable inference that York did say something not heard by Spicer or Hays which Eldridge considered insulting or abusive, but that did not justify the assault and did not make York the aggressor or constitute such provocation as to deprive his dependents of the right to compensation.

In Hartford Accident & Indemnity Co. v. Cardillo,

72 App. D. C. 52, 112 F. 2d 11, 17, an employee was addressed as "Shorty" by his superior. The employee resentfully called his superior a vile name, and thereupon his superior struck him. It was held that the resulting injuries were compensable as arising out of and in course of the employment. The court said:

"Taking full acount not only of the findings but of all the evidence, it is clear that the entire sequence of incidents occurred not only while the claimant and his assailant were at work, but as a natural and normal product of working together. The record shows no private or personal relations between them. * * * The claimant may have been at fault in resenting his superior's ridicule, expressed perhaps as much in tone as in language, by repeated use of the diminutive nickname, both personally and officially. His remonstrance should have ended the practice. When it did not, the fighting word sprang to the lips, and the superior employee responded with his fist. Claimant may have been at fault, but he was the aggressor neither in the banter nor in the physical encounter."

The jury which tried Eldridge for murder and convicted him of manslaughter necessarily found that he struck and killed York in sudden affray or in sudden heat of passion without previous malice and not in his necessary, or apparently necessary, self-defense. Its conclusion was a logical one. Disagreements and fights arising between employees about their work which result in injuries or death may reasonably be termed incidental to the employment. Here, the evidence was sufficient to establish the relationship between the employment and the injury and, though the injury was not one that could have been foreseen or expected, it was one which, after the event, is seen to have had its origin in the nature of the employment. In order to establish their right to compensation under the Workmen's Compensation Act for the death of an employee, the claimants have the burden of proving that the employee came to his death as the result of an accident arising out of and in the course of his employment, Lee Clay Products Co. v. Stamper, 268 Ky. 786, 105 S. W. 2d 1069, but as said in Louisville Public Warehouse Co. v. Marcell, 274 Ky. 320, 118 S. W. 2d 696, 698:

"Direct evidence that an employee came to his death

312

in such a manner or by a cause entitling claimants to compensation does not have to be produced. It is sufficient if the evidence is such as will reasonably sustain an inference or raise a presumption to support it."

We think that the only reasonable inference from the evidence is that the assault resulted from an altercation connected with or pertaining to the employment.

The judgment is reversed, with directions to remand the case to the Workmen's Compensation Board for proceedings consistent herewith.