### David Dillon's Case.

Suffolk.    November 1, 1948. — March 29, 1949.

Present: Qua, C.J., Ronan, Wilkins, Spalding, & Williams, JJ.

*Workmen's Compensation Act*, Injuries to which act applies; Assault; Serious and wilful misconduct of employee; Attorney's fee; Procedure: recommittal to Industrial Accident Board, expenses of certification or appeal. *Proximate Cause. Error*, Whether error harmful. *Words*, "Serious and wilful misconduct."

The mere fact, found in a workmen's compensation case, that the claimant, the leader of a gang of workmen, struck the first blow and "started" a fight with another workman in the gang, in the course of which the claimant was struck and injured by the other workman, did not justify a ruling of law that the claimant's injuries did not arise out of his employment.

Warranted findings in a workmen's compensation case as to the methods of the leader of a gang of workmen who was "a hard boss and strict disciplinarian" and as to resentment thereof and consequent words

and conduct on the part of another workman in the gang, justified a conclusion that a quarrel between the leader and the other workman culminating in a fight between them, and injury to the leader from a blow by the other workman in the course of the fight, arose out of the employment, even though the leader struck the first blow and "started the fight."

The provision, added to § 26 of the workmen's compensation act, G. L. (Ter. Ed.) c. 152, by St. 1937, c. 370, § 1, that an injury to an employee through "the physical activities of fellow employees in which he does not participate" "shall be conclusively presumed to have arisen out of the employment," was intended to enlarge employees' rights and did not by implication limit the scope of the words in the first sentence of the section, "arising out of . . . his employment," adversely to a claimant injured by reason of such "activities" but not entitled to such presumption because of participation therein.

Warranted findings in a workmen's compensation case justified a conclusion that the leader of a gang of freight handlers, injured in the course of a fight with another workman in the gang, was not guilty of "serious and wilful misconduct" in striking the first blow starting the fight.

The circumstance, that a decision certified by the Industrial Accident Board on recommittal in a workmen's compensation case went beyond narrow grounds specified in the decree of recommittal, did not show prejudicial error in a refusal to recommit the case a second time where the decree of recommittal should have specified broader grounds going to the essentials of the case and such decision on recommittal supplied for the first time the necessary factual basis for a final decree and was the same decision as would have been received from the board in response to a proper decree of recommittal.

The Superior Court had power under G. L. (Ter. Ed.) c. 152, § 11A, inserted by St. 1945, c. 444, to make an allowance for the reasonable cost of attorney's fees, briefs and other necessary expenses in that court to the claimant in a workmen's compensation case where, although a decision by the Industrial Accident Board adverse to the claimant had been certified to that court by him, upon recommittal the board certified to that court, and the insurer filed therein certified copies of, a second decision favorable to the claimant, upon which a final decree in his favor including such allowance was entered.

G. L. (Ter. Ed.) c. 152, § 11A, inserted by St. 1945, c. 444, providing for an allowance to a claimant in a workmen's compensation case for the reasonable cost of attorney's fees, briefs and other necessary expenses in the Superior Court is intended to apply whenever the insurer is the party objecting to the decision of the Industrial Accident Board and is seeking to have it reversed or modified and is therefore in the position of a party appealing. Per QUA, C.J.

An allowance in a final decree of the Superior Court of $1,000 to the claimant in a workmen's compensation case for the reasonable cost of attorney's fees, briefs and other necessary expenses in that court under G. L. (Ter. Ed.) c. 152, § 11A, inserted by St. 1945, c. 444, was

reduced by this court to $500 where the record, showing in detail the nature of the case and the questions involved, required a conclusion that there could have been no competent evidence before the Superior Court sufficient to justify a finding that an allowance larger than $500 was reasonably necessary to secure adequate representation of the claimant in that court.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The case was recommitted to the board by *O'Connell*, J., and the insurer appealed. By order of *Broadhurst*, J., there was entered a decree denying a motion by the insurer to "set aside" the decision made by the board on recommittal and ordering the insurer to pay the claimant compensation in the sum of $4,500, costs, and the further sum of $1,000 "under St. 1945, c. 444, as the amount sufficient to relieve . . . [him] of the reasonable costs of attorney's fees, briefs and other expenses resulting from the certification to" the Superior Court. The insurer also appealed from the final decree.

*E. R. Langenbach*, for the insurer.

*J. H. Morris*, for the claimant.

QUA, C.J. On November 17, 1942, the employee, who had previously lost the sight of one eye, lost the sight of the other eye and became totally and permanently blind as the result of a blow struck by a fellow workman, named Kenney, while the employee, Dillon, was acting as a "gang leader" for Boston Tidewater Terminal, Inc., and was in charge of a gang of eight men engaged in unloading a car of cement in bags on a wharf at the army base in Boston.

The evidence received by the single member of the Industrial Accident Board was in part conflicting and was largely repetitive as the members of the gang and others present told what they observed. We state only the evidence most favorable to Dillon which the board could have believed. Dillon "made his gang work hard." "All the men more or less were a little upset; they seemed to think they were doing more work than they should be doing."

It "seemed . . . that they were getting more cars than they should be getting." One witness attributed the trouble to the fact that they were working too hard. He believed "Dillon had the name of doing half again as much work as any of the other gangs did." He was "hard to satisfy." Kenney and Dillon had not been "getting along very well." "Dillon had told Kenney he was not satisfied with Kenney's work." On the occasion of the assault Kenney "could see from Dillon's actions that he [Kenney] wasn't doing enough work to suit" Dillon. At that time there was talk from which it could be found that Kenney was accusing Dillon of favoritism. On that day Kenney expressed a desire to get out of the gang, and when the foreman came along Dillon told him that he wanted Kenney taken out because he had been "impudent." Both Kenney and Dillon "seemed pretty angry." As soon as the foreman went away Kenney "rushed" out of the car and stepped on top of a pallette which Dillon was about to raise and to put on the trailer to receive the next lot of bags. Dillon told him to get off. A blow or blows followed. The evidence was conflicting as to whether Dillon first struck Kenney and then Kenney struck Dillon in the eye, or whether Kenney's blow was the first and only one.

The decision of the single member of the board consisted of a brief summary of the evidence; three general findings: (1) that Dillon was injured in the course of his employment, (2) that the injury did not arise out of his employment, and (3) that it was caused by his serious and wilful misconduct; the granting of all of the insurer's requests for rulings; and the refusal of all of Dillon's requests. This decision contained no subsidiary findings of fact. The case was one in which the result might have depended upon whether one view or another was taken of the particular facts. The decision of the single member seems to us not to have complied with the requirement frequently stated in the cases that a background of fact must be supplied in sufficient detail to enable the court to determine whether correct rules of law have been applied to the facts found. *Di*

*Clavio's Case*, 293 Mass. 259, 261–262. *Belezarian's Case*, 307 Mass. 557, 560. *Roney's Case*, 316 Mass. 732, 736. The reviewing board, apparently taking this view of the single member's decision, without hearing further evidence, affirmed the decision "in result" but found "specifically" that Dillon himself "struck the first blow and started the fight in the course of which" Kenney struck Dillon in the eye. The board "therefore" found that Dillon "engaged in a mutual assault which he himself provoked" and "therefore" ruled that his injury did not arise out of his employment. The board, as we interpret its decision, made no finding as to serious and wilful misconduct and did not adopt the finding of the single member on that point. We construe the action of the board as a ruling of law that, if Dillon "struck the first blow" and so "started the fight," his injury could not arise out of his employment. The board's decision was placed solely upon this ground.

In our opinion a positive ruling of law to this effect could not properly be made in a case like this. The striking of the first blow is not the sole and ultimate test as to whether the injury arose out of the employment. We think it is possible for an injury to arise out of the employment in the broad sense of the workmen's compensation law (G. L. [Ter. Ed.] c. 152, § 26, as most recently amended by St. 1945, c. 623, § 1), even though the injured employee struck the first blow. We must constantly remind ourselves that in compensation cases fault is not a determining factor, whether it be that of the employee alone or that of the employee contributing with the fault of others, unless it amounts to the "serious and wilful misconduct" of the employee which by § 27, as appearing in St. 1935, c. 331, bars all relief to him. Apart from serious and wilful misconduct, the question is whether the injury occurred in the line of consequences resulting from the circumstances and conditions of the employment, and not who was to blame for it. Our own decisions have long since passed the point where it could be contended that an intentional assault upon the employee by a third person necessarily broke the causal

relation between the employment and the injury. *Mc-Nicol's Case*, 215 Mass. 497. *Reithel's Case*, 222 Mass. 163. *Harbroe's Case*, 223 Mass. 139. *Cranney's Case*, 232 Mass. 149. *Zygmuntowicz v. American Steel & Wire Co.* 240 Mass. 421, 424. *Broadbent's Case*, 240 Mass. 449. *McLean's Case*, 323 Mass. 35, 37–39. The decisions in *Moore's Case*, 225 Mass. 258, *Gavros's Case*, 240 Mass. 399, and *Lee's Case*, 240 Mass. 473, rest simply upon the ground that in those instances the causal relation did not appear. Whether each of those cases would be decided the same way today need not be considered. See *Zarba v. Lane*, 322 Mass. 132, 134, note. So even where the employee himself strikes the first blow, that fact does not break the connection between the employment and the injury, if it can be seen that the whole affair had its origin in the nature and conditions of the employment, so that the employment bore to it the relation of cause to effect. In the present case there was no evidence whatever of any friction between Dillon and Kenney except in connection with their work. It could reasonably be found that a smoldering enmity was engendered between these men by the carrying on of the employer's work, the control which Dillon as gang leader had over Kenney, and the manner in which he exercised that control in his employer's interest, and it could even be found that at the moment of the trouble Kenney was intentionally interfering with Dillon's work by standing upon the pallette which it was Dillon's duty to raise. In such a case, when the accumulated strain finally breaks down resistance, it seems a narrow treatment of the problem to determine the granting or denying of compensation by the more or less fortuitous circumstance of who aimed the first blow. On all the evidence we think findings were warranted that both the quarrel and the ensuing injury arose out of the emp oyment.

No case quite like this seems to have come before this court. Numerous cases more or less similar have arisen in other jurisdictions. A great many of them are collected in a comprehensive article by Samuel B. Horovitz in 41 Ill. L. Rev. 311. There is much conflict among them, even

sometimes, as it seems to us, among those in the same juris-
diction. We agree, however, with the statement of Clark,
J., in *Kable* v. *United States*, 169 Fed. (2d) 90, 93–94, that
in compensation cases "recovery is increasingly allowed for
injuries sustained as a result of fighting without making too
fine a point as to who was the aggressor." [1]

At this point it is appropriate to say that in our opinion
the employee is neither aided nor harmed by the provision
added to G. L. (Ter. Ed.) c. 152, § 26, by St. 1937, c. 370,
§ 1, which so far as it might be thought material reads, "if
an employee . . . is injured by reason of the physical
activities of fellow employees in which he does not partici-
pate, whether or not such activities are associated with the
employment, such injury shall be conclusively presumed to
have arisen out of the employment." This provision creates
a presumption in favor of the employee in the circumstances
stated. In this case, however, it cannot be said that Dillon
did not "participate," and so no presumption arises in his
favor. On the other hand, it seems clear that the 1937
amendment was designed to confer larger rights upon em-
ployees than they had before and does not by implication
limit the sweep of the words "arising out of . . . his em-
ployment" as used in the first sentence of the section.

Since in our opinion the reviewing board erroneously
ruled that the striking of the first blow by Dillon was as
matter of law a bar to his recovery, the Superior Court, upon
certification to it of the board's decision, ought to have
recommitted the case to enable the board to pass upon the

[1] Among cases tending to support our own views we may mention *Western
Indemnity Co.* v. *Pillsbury*, 170 Cal. 686, *Stulginski* v. *Waterbury Rolling
Mills Co.* 124 Conn. 355, *Brown* v. *Vacuum Oil Co.* 171 La. 707, *Kaiser* v.
*Reardon Co.* 355 Mo. 157, *Newell* v. *Moreau*, 94 N. H. 439, *Sanders* v. *Jarka
Corp.* 61 Atl. (2d) 641, *Leonbruno* v. *Champlain Silk Mills*, 229 N. Y. 470,
*Verschleiser* v. *Joseph Stern & Son*, 229 N. Y. 192, *Corbett* v. *Biewener*, 270
App. Div. (N. Y.) 782, *Chanin* v. *Western Union Telegraph Co.* 271 App.
Div. (N. Y.) 763 (but compare *Ognibene* v. *Rochester Manuf. Co.* 298 N. Y.
85), *Meucci* v. *Gallatin Coal Co.* 279 Pa. 184, 187, and *Hartford Accident &
Indemnity Co.* v. *Cardillo*, 112 Fed. (2d) 11. Among cases tending in the
opposite direction are *Birchett* v. *Tuf-Nut Garment Manuf. Co.* 205 Ark. 483,
*Armour & Co.* v. *Industrial Commission*, 397 Ill. 433, *Romerez* v. *Swift & Co.*
106 Kans. 844, *Gray's Case*, 123 Maine, 86, *Hill* v. *Liberty Motor & Engineer-
ing Corp.* 185 Md. 596, *Horvath* v. *La Fond*, 305 Mich. 69, and *Jackson* v. *State
Compensation Commissioner*, 127 W. Va. 59.

underlying questions of fact whether upon all the evidence the injury arose out of the employment and whether Dillon had been guilty of serious and wilful misconduct, neither of which questions had been decided by the board. Instead of recommitting for these indispensable purposes the court recommitted upon other and narrow grounds not going to the vitals of the case. The insurer appealed from the interlocutory decree of recommittal. Whether there was any error in this decree of which the insurer can complain we do not pause to consider, since the form of recommittal has become immaterial for reasons that will now be stated.

Upon recommittal a second reviewing board heard further argument. They made the general findings, not included in the first decision, that the employee's injury arose out of his employment, and that he was not guilty of serious and wilful misconduct, and they supported these general findings by subsidiary findings that Dillon "was known to have been a hard boss and a strict disciplinarian"; that this would tend to make him unpopular to those under his authority; that the assault grew out of his application of stern discipline which was resented by Kenney; that "the entire controversy which led to the employee's injury grew out of his duty and exercise of authority over a subordinate" and was intimately connected with his work and incidental thereto; that even though Dillon aimed the first blow, he "was provoked and goaded to such action by the conduct and words of his subordinate Kenney"; and that the blows and the conduct and words of Kenney which provoked the affray arose out of and were incidental to their mutual employment and were in no way related to any purely personal animus between these two men. The board, being of opinion that these findings required a decision in favor of the employee, added the findings necessary to the entry of a decree in the Superior Court in his favor. All of these findings were consistent with each other, were not inconsistent with any findings of fact made in the first decision, if that is material (see *Canning's Case*, 283 Mass. 196), and in our opinion were warranted by the evidence.

We include in this last statement the finding that the employee was not guilty of "serious and wilful misconduct" within § 27 of the act. The question is not whether there was evidence of serious and wilful misconduct. The question is whether the subsidiary findings establish such conduct as matter of law. In order to bar the employee his conduct must be both serious and wilful. The word serious refers to the conduct itself and not to its consequences. Wilful implies intent or such recklessness as is the equivalent of intent. This subject was recently discussed and the cases collected in *Scaia's Case*, 320 Mass. 432. In that case we directed attention to the definition of "reckless disregard of safety" in § 500 of the Restatement: Torts as involving not only the intentional doing of the act charged, but also an easily perceptible danger of substantial bodily harm or death and a great chance that such harm will result. See also *McCarthy's Case*, 314 Mass. 610. It could be found that in the heat of passion, "goaded" by Kenney, Dillon struck one blow without using a weapon of any kind. It would be going too far to say that in the rugged environment of a gang of freight handlers such conduct is as matter of law serious and wilful.

In this second decision the reviewing board went beyond the terms of the order of recommittal. Ordinarily such a course is not to be commended. In this case, however, the new findings for the first time supplied the material necessary to a decree in the Superior Court. They would be in accordance with such an order of recommittal as the Superior Court ought to have made. When this second decision was certified by the board to the Superior Court, that court denied a motion by the insurer to set it aside and entered a decree based upon it. It accepted the decision as if the order of recommittal had been what it ought to have been. The alternative would have been to recommit the case to the board for the purpose of receiving back from the board a decision which we may assume would have been exactly the same as that which the court already had before it. If there was any error in refusing to engage in such a futility

it was of the most technical kind and did not prejudice the rights of anyone. See *Doherty's Case,* 222 Mass. 98, 100; *Lopes's Case,* 277 Mass. 581, 587–588; *Mizrahi's Case,* 320 Mass. 733, 738. It does not call for reversal.

The insurer attacks that part of the final decree in which the judge allowed the employee the sum of $1,000 as the amount sufficient under G. L. (Ter. Ed.) c. 152, § 11A, as inserted by St. 1945, c. 444, to relieve him of the reasonable cost of attorney's fees, briefs and other necessary expenses. This statute is entitled, "An Act relieving employees and dependents of the expenses of certain appeals in workmen's compensation cases." It provides that the court shall make the allowance "If the certification or appeal to the superior court is by the insurer, and the claimant prevails." The insurer argues that the case is not within the statute because the employee or claimant and not the insurer certified to the court the first decision of the board, which was against the employee. It appears, however, from a stipulation of the parties that in this case the insurer did file in the Superior Court certified copies of the second decision of the board and other papers in connection therewith, although the board had itself previously certified its second decision to the court in pursuance of the order of recommittal. Apart from the circumstance, which might not be repeated in other cases, that the insurer did certify the board's decision on recommittal, it appears that the statute cannot be construed literally without rendering it largely abortive. The workmen's compensation law does not provide for any appeal in the technical sense to the Superior Court. It provides in § 11, as amended, for the presentation to that court of certified copies of an order or decision of the reviewing board, although the second paragraph of this section does refer to this procedure as "certification or appeal." The procedure of § 11 is the method of enforcement of decisions of the board. The employee is compelled to use it to secure enforcement. The insurer is under no such compulsion. It would seem that the insurer, if willing to waive its appeal to this court by failing to make the presenta-

tion itself within the ten days mentioned in § 11, could always throw the burden of presentation upon the employee and so deprive him of the attorney's fees and expenses which the act of 1945 was designed to give him. We think that the act was intended to apply whenever the insurer is the party objecting to the decision of the board and is seeking to have it reversed or modified and is therefore in the position of a party appealing. We need not now attempt to deal with a case where both parties object. There is no doubt that in this instance the insurer was in the position of an appellant trying to secure reversal of the board's decision. It was proper to make an allowance.

It is also contended that the amount of the allowance was too large. In allowing attorney's fees it must be remembered that the party paying and the attorney receiving did not voluntarily enter into free bargaining relations with each other; and that the payment is a forced one (see *Lewis* v. *National Shawmut Bank*, 303 Mass. 187, 191); that the burden which the workmen's compensation law places upon industry is intended for the benefit of employees and not of attorneys; that one of the principal arguments in favor of the enactment of that law was that under the former system persons injured received too small a proportion of the total cost; that the allowance in question is only for services in the Superior Court; that there was no trial in that court but only argument on the law; that there was no printed record or brief; that any other expenses could hardly have been more than trivial; that the attorney was entitled to be paid for his services before the board, which must have comprised a large part of the total services rendered, in accordance with G. L. (Ter. Ed.) c. 152, § 13, and will be entitled to a further allowance for services in this court; and that the maximum sum involved in the whole case was $4,500. The design of the statute was to "relieve the employee of the reasonable cost of attorney's fees, briefs and other necessary expenses." We cannot escape the belief that, even though fairly difficult questions of law were involved, a competent attorney could have been secured to

perform adequately the services rendered in the Superior Court for a sum not exceeding $500. In *Watson's Case,* 322 Mass. 581, at pages 585–586, we felt there was not sufficient evidence before this court to enable us to revise an allowance for attorney's fees. In the present case it is not quite correct to say that we have not sufficient evidence before us. We know in full detail the nature of the case and the questions involved. Those are the most important factors bearing on the amount of the fees in a case like this and could not be changed by any evidence heard by the judge. In view of the considerations already stated we are compelled to conclude that there could have been no competent evidence sufficient to justify a finding that a larger amount than we have allowed was reasonably necessary to secure adequate representation.

The appeal from the interlocutory decree has become immaterial and is dismissed. The final decree is modified by reducing the amount allowed for attorney's fees, briefs and expenses to $500, and as so modified is affirmed. The reasonable cost of attorney's fees, briefs and other necessary expenses of the employee resulting from the appeal to this court are to be allowed by the single justice.

*So ordered.*