Heffernan, J.
The employer and its insurance carrier have appealed from an award of death benefits to various special funds in the sum of $2,000’pursuant to the provisions of subdivision 9 of section 15 and section 25-a of the Workmen’s Compensation Law by virtue of the fact that decedent was not survived by any person entitled to compensation. A further award in the sum of $200 for funeral expenses was made to the executor of decedent’s estate from which appellants have also appealed.
The sole issue raised on this appeal is whether decedent’s death resulted from an accident which arose out of and in the course of his employment.
Decedent was employed by the Bronx Hospital as an engineer. His duties required him to work on a night shift between *710 the hours of 12:00 m. and 8:00 a.m. He usually relieved a coemployee named O’Connor, also an engineer, who worked between the hours of 4:00 p.m. and midnight. Decedent was relieved by another coemployee named Hayes, an engineer whose tour of duty began at 8:00 a.m. and terminated at 4:00 p.m. Each of the engineers was assisted by a fireman on his respective shift. The fireman on each shift was required to pull eight or nine cakes of ice from the storage room under the supervision of the engineer on duty.
On June 30, 1946, decedent reported for work at 11:30 p.m. At that time the fireman who was assigned to decedent reported to the latter that the fireman assisting O’Connor had not pulled his share of ice.' Decedent remonstrated with O’Connor about the matter and the latter denied that his fireman had failed to perform his part of the work. The two engineers engaged in a heated discussion on the subject which resulted in an altercation during which twenty-five or thirty fist blows were exchanged before the fight ceased. Within a few seconds therafter decedent collapsed and fell to the floor. A doctor was called immediately and pronounced decedent dead. He attributed the death to an emotional trauma of the heart. The doctor found that “ there is direct causal relationship between the emotional trauma and the cause of death.”
The fight between the two men was unwitnessed. The only testimony we have as to the occurrence comes from the mouth of O’Connor who said that decedent struck the first blow. Even though his testimony was unrefuted the board was not compelled to believe it.
It is undisputed that the quarrel between the two employees was not due to any personal animosity on the part of either but was caused solely by reason of their disagreement over the method of performance of their employer’s work. The assault had its origin in the work and the working environment.
The contention of appellants is that decedent’s injuries and death did not arise out of his employment; that he was the aggressor and initiated the assault resulting in his death and hence that the award is erroneous as a matter of law. In support of that argument they cite section 10 of the Workmen’s Compensation Law, the pertinent provision of which is that there shall be no liability for compensation under the statute “ when the injury has been solely occasioned * * * by wilful intention of the injured employee to bring about the injury or death of himself or another.”
*711 The quoted phrase used in the statute “ means something different from and more than mere negligence, or even gross or culpable negligence. The phrase imports deliberateness, and not mere thoughtlessness or lack of judgment. It has been said to involve conduct to which moral blame attaches — the intentional doing of something either with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its probable consequences. The seriousness contemplated by the statute must attach to the act in the doing of it, however, and not merely to the consequences thereof as they actually develop.” (58 Am. Jur., Workmen’s Compensation, § 200, pp. 708-709, and cases there cited.) But no such “ wilful intention ” can be spelled out of every aggressive act. A playful punch, an angry word, an impulsive blow is not what the Legislature intended to punish, by depriving workers of compensation. Courts are not justified in reading into the compensation act discarded principles of the common law in order to relieve industry of a liability and place it on the worker.
There is no finding in this record by the board, and the proof would justify no such conclusion, that decedent’s death was occasioned by his own willful intention.
In the early days, when the words ‘ * arising out of the employment ” were given a narrow and strict construction, the courts invariably denied compensation in sportive and malicious assaults. The modern trend of the courts is to construe compensation laws broadly and liberally to protect the interests of the injured worker and his dependents and today the courts are constantly declining to be bound by earlier narrow precedents.
In the case before us we think it is entirely immaterial whether decedent be viewed as the aggressor or the innocent victim. Our statute contains no defense that an “ aggressor ” or “ participant ” is to be denied recovery in horseplay cases or those of malicious assaults. Its insertion is purely judicial, justified by no legislative fiat, and sustained only by the court’s conclusion that culpable persons should not benefit by their own wrong — the very defense that the compensation act rejects. Negligence or guilt or assumption of risk are all banned as defenses in our compensation law. The victim of work-induced assaults should be given compensation rights, without importing narrow common-law rules barring an aggressor, and without indulging in mental gymnastics to determine who struck the first blow. Using the word “ aggressor ” as a defense to an *712 award is to bring back into the compensation law common-law defenses which have been outlawed.
The overwhelming weight of modern authority holds that assaults are compensable where the injury arises out of quarrels over the manner of doing the work of the employer (Hegler v. Cannon Mills Co., 224 N. C. 669), or over the use of tools or facilities for performing that work (Schueller v. Armour & Co., 116 Pa. Superior Ct. 323 — where decedent struck the first blow), or over shirking or sharing work (Consolidated Underwriters v. Adams, 140 S. W. 2d 221 [Tex.]), or other work matters (Matter of Corbett v. Biewener, 270 App. Div. 782) as distinguished from purely personal quarrels and also to allow recovery in those assaults which are the result of impulsive thoughtless or unintentional acts, even though in anger or with ill will, often trivial in origin, although the result may be serious or even fatal.
The most recent doctrine is to allow an award for injuries or death resulting from sportive or malicious assaults, even to aggressors, where the injury or death is a by-product of associating men in close contacts, thus realistically recognizing the “ strains and fatigue from human and mechanical impacts ” (Newell v. Moreau, 94 N. H. 439; Dillon’s Case, 324 Mass. 102; Hartford Accident & Ind. Co. v. Cardillo, 72 D. C. App. 52, 112 F. 2d 11, certiorari denied 310 U. S. 649; Stulginski v. Waterbury Rolling Mills Co., 124 Conn. 355; Daugherty v. City of Monett, 238 Mo. App. 924; York v. City of Hazard, 301 Ky. 306; Hegler v. Cannon Mills, supra; Kable v. United States, 169 F. 2d 90; Stark v. State Ind. Accident Comm., 103 Ore. 80). (And for a most complete and comprehensive discussion of this subject by that eminent authority on workmen’s compensation, railroad arid admiralty law, Dr. Samuel B. Horovitz of the Boston Bar, see Current Trends Personal Injuries and Deaths under the [same laws], 3 NACCA L. J., 1 NACCA L. J.; also the same author on Modern Trends in Workmen’s Compensation, 21 Ind. L. J. 473, 491-493; also by the same author the article entitled Assaults and Horseplay under Workmen’s Compensation Laws, 12 [Mass.] L. Soc. J. 179-244.)
Newell v. Moreau (supra) and Dillon’s Case (supra) so far as our research discloses, are the leading authorities in the United States to date on the problem of aggressors in work assaults.
In the Newell case (94 N. H. 439, supra) the deceased was a boss shipper. He had an argument with one of the truck drivers regarding the work. Newell attacked the driver; the *713 latter struck Newell who died of the blow. Compensation was denied his widow on several grounds, mainly that there was no accident and that the deceased was the aggressor. The Superior Court denied an award. The Supreme Court of New Hampshire in an opinion by Mr. Justice Kenison reversed the determination and held that Newell’s estate was entitled to compensation. In the course of his opinion Justice Kenison said (pp. 442-443): “ Compensation was also denied because Newell was an ‘ aggressor. ’ There is much conflict in the decisions on this point (112 A. L. R. 1258, 1270) but the trend of the modern authority is to allow recovery. In order not to bludgeon the bar into insensibility by copious citations and prolix footnotes we refer to the discussion and collection of cases in the articles cited in the first part of the opinion. The defense of ‘ aggression ’ is not to be found in our statute or in other compensation laws. By the application of tort reasoning the defense has been judicially inserted in some compensation cases. We have already refused to read in a similar defense in sportive assaults (Maltais v. Assurance Society, [93 N. H. 237] supra) and we see no reason for its judicial insertion in this assault. In reaching this result we have endeavored to follow the able reasoning of three leading cases in workmen’s compensation law; Cardoso, J. in Leonbruno v. Mills, 229 N. Y. 470; Rutledge, J., in Hartford etc. Co. v. Cardillo, 122 F. (2d) 11; and Marble, C. J., in Maltais v. Assurance Society, supra. Plaintiff is entitled to compensation in accordance with R. L., c. 216. Exceptions sustained.”
And he added another sobering thought on the subject — that there is no distinction between aggression in assaults and aggression in horseplay cases. The principle was the same.
‘ ‘ While it is true that the assault in the Maltais case, supra, [93 N. H. 237] was sportive in nature, the reasoning of that decision is not so limited. An assault whether by design or in sport is in the course of employment where, as here, it was caused by or resulted from working conditions.” (P. 441.)
He disposed of the insurer’s contention that an assault by design could not be “by accident ” in the following language (p. 440): “ It is argued that Newell’s death was not ‘ by accident ’ within the meaning of R. L., c. 216, s. 2. The trend of the recent cases regard assaults by design as accidents. From the point of view of the victim and in a popular sense (Moore v. Company, 88 N. H. 134, 138), Newell’s death was sudden, unexpected and truly accidental. The majority of the cases, particularly those decided in the last three years, support this *714 view. Horovitz, Modern Trends in Workmen’s Compensation, 21 Ind L. J. 473, 491-493 (1946); Duncan v. Perry Packing Co., 162 Kan. 79; Hagger v. Wortz Biscuit Co., 210 Ark. 318; Kaiser v. Reardon Co., 355 Mo. 157; Echols v. Company, 74 Ga. App. 18.”
In Dillon’s Case (324 Mass. 102, supra) it appeared that he was a gang leader for Boston Terminal Tidewater, Inc., and in charge of a gang of men. Dillon quarrelled with a workman named Kenney because he was not satisfied with the latter’s work. A fight ensued and Dillon struck Kenney and in retaliation Kenney struck Dillon in the eye causing him to lose the sight of it. The board found that Dillon struck the first blow and so started the fight and consequently that his injury did not arise out of his employment and based its decision solely on that ground. In reversing that decision the Supreme Judicial Court of Massachusetts in an opinion by Chief Justice Qua said (pp. 106-107): “In our opinion a positive ruling of law to this effect could not properly be made in a case like this. The striking of the first blow is not the sole and ultimate test as to whether the injury arose out of the employment. We think it is possible for an injury to arise out of the employment in the broad sense of the workmen’s compensation law (G. L. (Ter. Ed) c. 152, § 26, as most recently amended by St. 1945, c. 623, § 1), even though the injured employee struck the first blow. We must constantly remind ourselves that in compensation cases fault is not a determining factor, whether it be that of the employee alone or that of the employee contributing with the fault of others, unless it amounts to the 1 serious and wilful misconduct ’ of the employee which by § 27, as appearing in St. 1935, c. 331, bars all relief to him. * * * So even where the employee himself strikes the first blow, that fact does not break the connection between the employment and the injury, if it can be seen that the whole affair had its origin in the nature and conditions of the employment, so that the employment bore to it the relation of cause to effect. In the present case there was no evidence whatever of any friction between Dillon and Kenney except in connection with their work. It could reasonably be found that a smoldering enmity was engendered between these men by the carrying on of the employer’s work, the control which Dillon as gang leader had over Kenney, and the manner in which he exercised that control in his employer’s interest, and it could even be found that at the moment of the trouble Kenney was intentionally interfering with Dillon’s work by standing upon the pallette which it was Dillon’s duty to *715 raise. In such a case, when the accumulated strain finally breaks down resistance, it seems a narrow treatment of the problem to determine the granting or denying of compensation by the more or less fortuitous circumstance of who aimed the first blow. On all the evidence we think the findings were warranted that both the quarrel and the ensuing injury arose out of the employment.”
In the York case (301 Ky. 306, 311, supra) Chief Justice Bees in writing the opinion for the Court of Appeals of Kentucky pointed out that the rule is well established that: “ Disagreements and fights arising between employees about their work which result in injuries or death may reasonably be termed incidental to the employment.”
In the Hegler case (224 N. C. 669, 671, supra) the Supreme Court of North Carolina said: “ While the assault may have resulted from anger or revenge, still it was rooted in and grew out of the employment.”
In the Stulginski case (124 Conn. 355, 364, supra) Chief Justice Maltbie said: “ The adoption of a rule, that if an injured employee was the aggressor he could not recover compensation, though the injury arose out of conditions of the employment, would require a definition of terms which would be extremely difficult. Certainly to hold that no matter what provocation and angry words there might have been between the parties, he who struck the first blow, slight though it might be, would be denied compensation would be neither reasonable nor in accordance with sound principles.”
It follows from what has been said that the awards appealed from should be and hereby are affirmed, with costs to the Workmen’s Compensation Board.
Fosteb, P. J., Bebgan and Coon, JJ., concur; Bbewsteb, J., concurs in the result.
Awards unanimously affirmed, with costs to the Workmen’s Compensation Board. [See 277 App. Div. 911.]