**HENRY VOGT MACHINE COMPANY,**
Appellant,

v.

**Mary B. CHAMBERLAIN et al., Appellees.**

Court of Appeals of Kentucky.

May 13, 1955.

Charles Leibson, Louisville, for appellant.

Stanley A. Stratford, Louisville, for appellees.

SIMS, Judge.

On this appeal from the judgment of the Jefferson Circuit Court upholding the maximum award of $9,500 of the Workmen's Compensation Board, the sole question for decision is whether or not the death of William Chamberlain arose out of his employment. To reach this question we must

determine (a) whether the court erred in admitting the testimony of certain material witnesses; (b) whether the evidence established plaintiff's case.

During January 1953, William Buchanan, Fred Unterneher, alias Wilson, and William Chamberlain were all employed in the blacksmith department of appellant, Henry Vogt Machine Company. Wilson was Chamberlain's helper and Buchanan was the former helper of Herman Blakey but had been promoted to blacksmith. Chamberlain's forge was near that of Buchanan.

On February 3, 1953, Buchanan did not work, but about 3 o'clock that afternoon, armed with a single-barrel shotgun, he took a cab and went to a point near appellant's plant, alighted at the company's gate and walked by two unarmed guards, whom he threatened with the gun when they tried to stop him. Buchanan proceeded to the blacksmith shop, where without a word he shot and killed Chamberlain, immediately reloaded his gun and killed Wilson.

Since Chamberlain and Wilson were killed while working on their regular jobs, it is beyond cavil they were killed in the course of their employment. It is stipulated they and their employer were operating under the Workmen's Compensation Act, KRS 342.001 et seq., and the wages of these men were sufficient to entitle their widows or dependents to the maximum compensation of $9,500.

Charles Thomas, an officer of the union at the plant, got word that Buchanan was in the building with a gun. Not knowing he had fired it, Thomas walked over to Buchanan and asked, "What was the idea of bringing a gun in here? He said, Well, Mr. Wilson and Mr. Chamberlain have been telling me how to run my fire." Thomas further testified this conversation with Buchanan took place "two or three minutes from the time he done the shooting if even that much."

Arthur Martin, who worked in appellant's boiler shop testified that after hearing the last shot he went to Buchanan in an attempt to take the gun away from him and

Buchanan said, "it was his gun, to leave it alone, no one was going to take it away from him. * * * Buchanan told me that the fellows out there had been running over him for a long time and he wasn't going to take any more of it." While the record does not show how many minutes after the shooting this conversation occurred, it must have been practically at the same time Charles Thomas testified his conversation occurred with Buchanan—two or three minutes after the shooting—as the record shows several men disarmed Buchanan immediately after the last shot was fired.

Fred Sterling, the driver of the cab in which Buchanan rode out to a point near appellant's plant, testified that Buchanan was drinking but he could not say he was drunk. Lt. Young of the Louisville Police Department, who questioned Buchanan about forty minutes after the shooting, testified that from his conversation with him he did not think Buchanan was insane at the time of the shooting. It appears in the record that Buchanan was adjudged insane on March 17, 1953, by the Jefferson Criminal Court; that he has been confined in the Lakeland Asylum since that time, and has never been brought to trial on the charge of murder.

There was testimony by Fred Sterling that when he got in the cab, Buchanan told him while driving out to appellant's plant, "They were pushing him around and he was going out there to kill them." Willis Wright, who worked in the plant, testified that Buchanan had told him on January 20, 1953, of having some trouble with deceased Wilson over a coke fork and "he (Buchanan) had told Fred Wilson off that day, that he didn't care if he was an old man, that he would hit him over the head and put him in the hospital or the graveyard." Several other witnesses testified as to conversations with Buchanan in which he complained of the way Chamberlain and Wilson had treated him.

Counsel for appellant objected on two grounds to the competency of all the testimony relating to what Buchanan said in reference to any mistreatment of him by

Chamberlain or Wilson: (a) it was hearsay; (b) Buchanan was insane when he made such statements and if they were not hearsay, still they were incompetent on account of his mental condition which made him lacking in capacity to testify.

Appellee insists she was not attempting to prove facts by this testimony, but only to prove Buchanan's state of mind, therefore the hearsay and insanity rules do not apply. It is further insisted by her the testimony of Thomas and Martin is admissible as part of the res gestae and their testimony establishes the killing of Chamberlain and Wilson arose out of their employment.

Since we conclude appellee is right in this last contention, we do not reach the question of whether the testimony of the other witnesses besides Thomas and Martin is incompetent under the hearsay rule. Nor does the fact that Buchanan was subsequently adjudged insane make incompetent his res gestae statements immediately following the shooting.

 A well-known exception to the hearsay rule is that anything which is a part of the act, or res gestae, is admissible in evidence. To be a part of the res gestae the statements made or the acts done following the happening of the principal event must be so intimately connected and interwoven therewith as to raise a presumption they are a part thereof, and must be so near in point of time as to exclude the presumption they were the result of premeditation or design. Consolidated Coach Corp. v. Earls' Adm'r, 263 Ky. 814, 94 S.W.2d 6; Castle v. Allen, 274 Ky. 658, 120 S.W.2d 219. Here, the conversations Thomas and Martin had with Buchanan occurred not exceeding two or three minutes after the shooting and were of a spontaneous nature and so closely connected with the shooting that they were admissible as part of the res gestae under the rule just stated.

 Appellant insists the conversations Martin and Thomas had with Buchanan, even though a part of the res gestae, are inadmissible because he at the time was insane. Admitting Buchanan might not have been sane at the time he made them, yet his remarks were admissible since it is the event which determines the competency of the proof, and whatever is a part of the event becomes admissible under the res gestae rule. 20 Am.Jur., Evidence, § 578, p. 574; State v. Lasecki, 90 Ohio St. 10, 106 N.E. 660, L.R.A.1915E, 202, Ann.Cas.1916C, 1182; State v. Smith, 26 Wash. 354, 67 P. 70; Louisville & N. R. Co. v. Studdard, 34 Ga.App. 570, 130 S.E. 532. The fact that a person may not be competent mentally to testify does not render his statements as part of the res gestae inadmissible, but merely bears on the weight and credibility thereof. 32 Am.Jur., Evidence, § 410, p. 24.

 The rule in this jurisdiction is that compensation will be granted for injuries due to an assault by a fellow employee when they are fairly traceable to an incident of the employment, and will be denied where they are the result of personal grievances not connected in any way with the employment. Kentucky Fluorspar Co. v. Wolford, 263 Ky. 471, 92 S.W.2d 753; York v. City of Hazard, 301 Ky. 306, 191 S.W.2d 239. Also see 58 Am.Jur., Workmen's Compensation, § 266, p. 767. The evidence of Thomas and Martin shows the shooting of Chamberlain and Wilson by Buchanan arose out of their employment in appellant's shop.

For the reasons given the judgment is affirmed.