Bobby HALL, d/b/a Hall's Wrecker Service, et al., Appellants,

v.

Avanell CLARK, Appellee.

Court of Appeals of Kentucky.

May 25, 1962.

Rehearing Denied Oct. 5, 1962.

Harry C. Campbell, Pikeville, for appellants.

Stratton & Ramsey, Pikeville, for appellee.

MILLIKEN, Judge.

On the premise that no basic factual issue was developed by the recorded evidence before the Board, the trial court concluded that it was not bound by the refusal of the

Workmen's Compensation Board to grant an award to the dependents of Freddie Gene Clark for his death. Clark was killed by a pistol shot by a fellow employee, Howard West. The trial court adjudged that "Avanell Clark, widow, for the benefit of herself and her infant children * * * recover the maximum compensation" for the death of her husband and remanded the action to the Workmen's Compensation Board for the entry of such an order. The Board had refused the award of compensation upon the ground that Clark was the aggressor in the fatal altercation.

The deceased was employed as a foreman by Bobby Hall, doing business as Hall's Wrecker Service, and was in general charge of the business when the owner was absent. He held the position for approximately three years except for one six months' period when he was engaged in other work. His employment had been continuous for approximately one year before his death. It was the custom for the employees, including Clark, to take turns staying on the premises until the night watchman, Howard West, came on duty at 7 p. m., and on the day of his death it was Clark's turn to stay until West came.

West had been acting as night watchman for about two months before the day of the killing, May 1, 1958. In 1957 bad feeling had developed on the job between West and Clark and they apparently had no contact with each other except during the employment. At that time West worked under Clark's supervision and the smoldering irritation between them resulted in West's leaving Hall's employment shortly before Christmas, 1957. During the couple of months of his subsequent employment as night watchman, West had little or no contact with Clark except at the times when it was Clark's duty to stay on the premises until West came on duty at 7 p. m. On the night of the killing West appeared a little earlier in order to work on his own automobile for which purpose he was permitted to use his employer's tools. At that

juncture Clark had gone to a scrap pile to obtain a usable gas tank for a customer and while he was on the way back with the gas tank West passed in his automobile and, intentionally or unintentionally, sloshed the contents of a lone mud puddle at Clark. Clark finished serving the customer, went over to West, and, according to a witness, struck West on the shoulder. The two men scuffled and were separated by their employer who pushed Clark in one direction and West in the other. Clark was bleeding from a cut on his head and, after the men had been separated, West drew his night watchman's pistol and shot Clark in the left side, resulting in his death before medical attention could be obtained.

The record indicates that West and other employees had been careless in not putting away the employer's tools and that West had been told by his employer that evening to be sure and put the tools away after he had finished with them. This admonition irritated West who had previously complained about Clark "ratting" on him on occasion. In any event, it is clear that whatever ill feeling existed between West and Clark had its origin and its nurture in their employment, and not in circles outside the place of their employment.

While society is reluctant to reward an aggressor ordinarily, just when the aggression begins is another question. In the instant case, did the aggression begin when West ran through the lone puddle in the road and sloshed its contents at Clark? Or did it begin when Clark struck West? Or was it when West shot Clark after they had been separated? Where the fight arises spontaneously after prolonged ill feeling on the job as it did here, it is difficult to conclude that the aggressor (assuming he can be ascertained) actually has so taken himself out of the scope of his employment as to justify denying his dependents compensation.

Where an employee had been denied compensation because he struck the first blow, the Supreme Court of Massachusetts re-

versed the Board in a well-reasoned opinion by Chief Justice Qua in Dillon's Case (1949), 324 Mass. 102, 85 N.E.2d 69, saying:

"The striking of the first blow is not the sole and ultimate test as to whether the injury arose out of the employment. * * * We must constantly remind ourselves that in compensation cases fault is not a determining factor, whether it be that of the employee alone or that of the employee contributing with the fault of others, unless it amounts to the 'serious and wilful misconduct' of the employee which by § 27, as appearing in St.1935, c. 331, bars all relief to him. Apart from serious and wilful misconduct, the question is whether the injury occurred in the line of consequences resulting from the circumstances and conditions of the employment, and not who was to blame for it. * * * So even where the employee himself strikes the first blow, that fact does not break the connection between the employment and the injury, if it can be seen that the whole affair had its origin in the nature and conditions of the employment, so that the employment bore to it the relation of cause to effect. In the present case there was no evidence whatever of any friction between Dillon and Kenney except in connection with their work. It could reasonably be found that a smoldering enmity was engendered between these men by the carrying on of the employer's work, the control which Dillon as gang leader had over Kenney, and the manner in which he exercised that control in his employer's interest, and it could even be found that at the moment of the trouble Kenney was intentionally interfering with Dillon's work by standing upon the 'pallette' which it was Dillon's duty to raise. In such a case, when the accumulated strain finally breaks down resistance, it seems a narrow treatment of the problem to determine the granting or denying of compensation by the more or less fortuitous circumstance of who aimed the first blow."

In the case at bar, there not only was no evidence of contacts between the two men outside of their employment, but in addition their employer knew of the ill feeling between them but, of course, could not have foreseen its tragic results.

We do not have a factual situation here such as was presented in City of Prestonsburg v. Gray (1960), Ky., 341 S.W.2d 257, where a former fire chief who had been discharged shot and killed his successor more than a year after he had lost his job. There had been no irritation between the men arising out of their employment and someone else had held the job a short period between the tenures of the killer and the deceased. When the Workmen's Compensation Board found that the killing did not arise out of the employment, we affirmed. Our present case has more similarity to other cases such as Henry Vogt Machine Company v. Chamberlain (1955), Ky., 279 S.W.2d 224; York v. City of Hazard (1945), 301 Ky. 306, 191 S.W.2d 239; Kentucky Fluorspar Company v. Wolford, (1936), 263 Ky. 471, 92 S.W.2d 753; Hansen v. Frankfort Chair Company (1933) 249 Ky. 194, 60 S.W.2d 349.

In Henry Vogt Machine Company v. Chamberlain, 279 S.W.2d 224, the killer, a coemployee of two deceased employees, secured a shotgun and drove in a taxicab to the plant. During the course of the ride he stated that they were pushing him around and he was going out there to kill them. He entered the plant and shot Chamberlain and Wilson. Immediately afterwards he stated that they had been telling him how to run his fire. The Court of Appeals held the death of Chamberlain compensable, and stated:

"The rule in this jurisdiction is that compensation will be granted for injuries due to an assault by a fellow employee when they are fairly trace-

able to an incident of the employment, and will be denied where they are the result of personal grievances not connected in any way with the employment."

The Vogt case answers rather well the issue raised by appellant that West was not on the job at the time of the killing. West had come to the employer's premises to commence work and was staying until 7 p. m. In the Vogt case, the killer was apparently not even employed or not working on that day. The fact that they were not working simultaneously does not change their status as fellow employees.

In York v. City of Hazard, 301 Ky. 306, 191 S.W.2d 239, York and Eldridge were coemployees working on a street cleaning crew for the City. The two parties were riding on the truck that had stopped for the purpose of unloading, and witnesses saw Eldridge strike York on the head with a shovel. From this blow, York died. Apparently York had made some statement to Eldridge because Eldridge was heard to say, "You can't talk to me that way," immediately before he struck York. The Court, in concluding that the death of York was compensable, stated:

"Disagreements and fights arising between employees about their work which result in injuries or death may reasonably be termed incidental to the employment. * * *

" 'Direct evidence that an employee came to his death in such a manner or by a cause entitling claimants to compensation does not have to be produced. It is sufficient if the evidence is such as will reasonably sustain an inference or raise a presumption to support it.' "

Apparently there had been some verbal provocation which may or may not have had anything to do with the employment. The Court of Appeals held that the death of York was compensable.

In Kentucky Fluorspar Company v. Wolford, 263 Ky. 471, 92 S.W.2d 753, an employee of the appellant was assaulted by a fellow workman and seriously injured. There had been previous trouble between the parties, and on the day in question the assailant believed that Wolford had made a complaint to the employer about his son and he attacked Wolford with a knife. The court, in holding the injury compensable, among other things, said:

"Even if it be conceded that a state of ill feeling existed between appellee and his assailant for several months and that the result was a culmination of the various altercations, still it resulted from a controversy pertaining to the employment."

As in the case at bar, the ill feeling between the parties had existed for a number of months and that ill feeling grew out of the employment.

In the early case of Hansen v. Frankfort Chair Company, 249 Ky. 194, 60 S.W.2d 349, the Court of Appeals decided the basic question at issue here. The injured party, Hansen, was a foreman, supervising work of convict labor in the factory of appellee. Proof indicated that Hansen, the foreman, had some small argument with an employee in the course of which he said, "I never saw a son of a b—— that came out of the mountains that could learn any sense." Whereupon Hansen was struck and knocked down, resulting in a skull fracture and the injuries complained of. The Court, reversing the decision of the Compensation Board, quoted the following from Inland Steel Company v. Flannery, 88 Ind.App. 347, 163 N.E. 841:

"When coemployees are working together, it is to be expected that disagreements will arise in connection with the work, and that there may be blows and fighting. Injury to an employee from such a source is one of the risks of the employment, within the

meaning of those terms as they are used in the Compensation Act."

In connection with this opinion, the Court of Appeals reviewed a number of authorities on the subject and noted that there was a conflict in the cases and that in the light of many authorities.the injury to Hansen would not be compensable, but said:

" * * * The fundamental purpose of these statutes (Workmen's Compensation) is to protect employees who accept its provisions, and the courts are inclined to give them a liberal construction where there is a causal relation between the employment and the injury."

It is our conclusion that the death of Clark arose out of and in the course of his employment, and that his dependents consequently are entitled to compensation.

The judgment is affirmed.