Schueller, Appellant, v. Armour & Company et al.

Argued October 4, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Thomas M. J. Regan,* for appellant.

*F. Raymond Wadlinger,* of *Foulkrod, Sheppard, Porter & Alexander,* for appellee.

OPINION BY JAMES, J., February 1, 1935:

This is an appeal from the judgment of the court of common pleas reversing an award of compensation for the death of claimant's husband.

The referee made the following findings inter alia: "All of the evidence presented conclusively estab-

lishes the fact that this man came to his death from violence. The evidence further establishes the fact that the man was engaged in nothing of an untoward nature except this scuffle while at work, which could have caused the violence necessary to rupture his spleen.

That the claimant has proven by competent and convincing testimony that the decedent met with an accidental injury while in the course of his employment with the defendant, such as contemplated by the Workmen's Compensation Act of 1915, as amended, as a result of which he died and his dependents, are therefore, entitled to compensation.''

The finding of the referee was affirmed on appeal to the Compensation Board, who found:

''In our opinion there is sufficient competent testimony to establish the fact that the decedent while in the course of his employment with the defendant company received an injury by accident which resulted in his death since the altercation between the decedent and Pincus was the outcome of the employment of the two and not because of any personal feeling the one had for the other, as there is nothing in the testimony to show that there was any grudge, hatred or ill-will between these parties prior to the altercation.'' The court below held: ''The evidence as to the scuffle brings us to the conclusion that the decedent committed a wilful, unprovoked attack upon his co-employe and not in the course of his work in the interest of his employer.''

Upon the appeal to the court of common pleas, that court was limited in its review to an examination of the proof to see whether legally competent evidence was present on the record to support the findings on which the award rests, and in the performance of our duty on this appeal we must be governed by the same rule.

Decedent was employed as a meat packer. Early on the morning of March 4, 1931, decedent had some ham trees on the elevator. William Pincus, a fellow employe, working on the third floor of the plant, rang the signal for the elevator, called down and could not get an answer. He went down to the first floor, took up the elevator to the third floor, unloaded the trees and placed some merchandise on the elevator, and returned to the first floor. While the elevator was at the third floor, words passed between Pincus and Schueller, and when the elevator returned to the first floor, the argument was continued, "getting hotter and hotter." According to the testimony of Claude R. Dunhaur, Pincus and Schueller hit each other, threw each other to the floor, and wrestled and were separated. The testimony of Pincus, called by defendant, is substantially the same except as to how the physical altercation began. He testified. " . . . . . . I proceeded to empty the elevator and put the ham trees on the third floor and loaded the elevator up with merchandise and took it down to the first floor and started to unload the elevator and Mr. Schueller came over and passed a few remarks and I paid no attention and proceeded to unload the elevator and I felt a blow struck in the back and I turned around and Mr. Schueller made another pass and struck me and I slapped him across the face and we clinched and had a little scuffle that lasted about a half minute and then my foreman, Mr. Meskunas, came over and that ended things. Q. Was your back turned to Mr. Schueller when he struck you? A. My back was turned to Mr. Schueller, yes, sir. Q. Did you hit him with your hands or did you attack him in any part of the body? A. No, I slapped him across the face with my open hand and then we clinched and as I said before after about half a minute it was all over," and on cross-examination: "Q. All this scuffle arose over the fact that you had

taken the elevator up that had some ham trees on that he was using? A. The elevator was not in use, he wasn't on the elevator, I took it up emptied the trees put a load on down on the first floor again, and had both loads off when Schueller appeared again, where he was I don't know and nobody else knows. Q. Was that the reason for this scuffle, the fact that you had—. A. He evidently was displeased because we used the elevator to get the work done, we had a tremendous lot to do,'' and on examination by the referee: '' ...... Q. Then the scuffle occurred over which one had the right to the elevator? A. He had the elevator loaded with empty trees and had the switch off, I rang the bell and called down and couldn't get any answer then I went to the first floor and didn't see him anywhere around so I went and took the empty trees off and put them in their place and loaded the elevator up again. Q. He presumed you were pulling off the material he put on? A. Empty trees, evidently he didn't like the idea of my helping him.''

Decedent continued his work until the usual hour and arrived home about 6:30 A. M. at which time he was complaining of severe pains, crawled upstairs and was assisted to bed. A physician was called, who ordered him sent to a hospital, an operation was performed and it was found that he had a ruptured spleen from which he died on March 8, 1931.

The main question before us is whether the death of claimant's husband was ''caused by an act of a third person intended to injure the employe because of reasons personal to him and not directed against him as an employe or because of his employment,'' Act of June 2, 1915, P. L. 736, Sec. 301, 77 PS §411. Under this exception to the general rule of liability for injuries suffered by an accident in the course of employment, the burden rested upon the defendant to show that the claim came within the exception, and that the

injury arose from personal difficulties not related to the course of employment: Meucci v. Gallatin Coal Co., 279 Pa. 184, 123 A. 766.

An examination of the entire record fails to convince us that the defendant has met its burden of proof. Nowhere in the record does it appear that any previous animosity or personal hostility existed between decedent and Pincus, but it does appear that the argument and the consequent altercation arose out of the dispute as to their respective use of the elevator. The court below assumes that the testimony of Pincus and Muskunus, the foreman, was the entire testimony relating to this assault, losing entire sight of the testimony of Dunhaur, who does not state that decedent first made the assault. Pincus' testimony indicates quite clearly, that the displeasure of decedent arose from the use of the elevator by Pincus, while he also was making use of it. Even assuming that decedent struck the first blow, it still was an altercation which grew out of the business and not as the result of a personal animosity. In Meucci v. Gallatin Coal Co., supra, where a controversy arose between the foreman and the employe as to the number of cars taken out by the employe, the fact that claimant struck the first blow and in turn was struck by the foreman, resulting in the loss of an eye, did not bring the facts within the exception of the act. In Vordy v. Joseph Horne Co., 96 Pa. Superior Ct. 552, where a dispute arose over the absence of paper towels, and finally without being attacked the other employe struck decedent with a piece of pipe and killed him, compensation was sustained. In Dalton v. Gray Line Motors Tours, 95 Pa. Superior Ct. 291, Judge GAWTHROP said: "The mere fact that claimant touched Heaton's arm did not make him such a violator of the law as to deprive him of his compensation. It was not so serious an offense as to cause the claimant to lose his status as an em-

ploye and become a criminal, bringing upon himself the injury for which he seeks compensation." In the present case the fact that decedent struck first, (assuming it to be true) was not such an assault under the circumstances as would exclude him or his dependents from compensation. In the recent case of Kline v. Penna. R. R., 101 Pa. Superior Ct. 539, Judge LINN, speaking for this court thoroughly reviewed and ably distinguished all of the authorities construing Section 301. In view of those authorities, we are convinced that an examination of the record in the present case does not warrant the conclusion reached by the court below.

The record discloses that there was no evidence of external injury on the body of the decedent but the testimony is positive that decedent met his death as a result of a ruptured spleen. Under the doctor's testimony, the spleen could have been ruptured without any evidence of external injury and that the rupture was recent, within thirty-six or forty-eight hours. The doctor who performed the operation, when asked: "Q. Doctor, assuming that on or about one A. M. of March 4, 1932 this man had an altercation with a fellow employe as a result of which blows were passed and as a further result of which this deceased was thrown to the floor and this other employe fell on top of him; and assuming further that on or about six A. M. of the same day he arrived home in great pain; what in your professional opinion do you think that fight and the things related had to do with the ruptured spleen which you found on March 4th when you operated?" replied: "I think it caused it, it could have caused it. I'm quite certain. Q. You are quite certain? A. Yes," further questioning by the referee: "And in the absence of any history of any other unusual exercise would you attribute this man's condition, presuming the facts given to you in Mr. Regan's

question were true, to that wrestling match? A. Yes, sir.'' Appellee contends that a portion of the hypothetical question submitted to the doctor, which assumed that the other employe fell on top of decedent, was not based on any testimony in the record. In view of the testimony of Claude R. Dunhaur that decedent and Pincus threw each other on the floor and Pincus when asked said that he did not remember whether he fell on top of the decedent or not, we do not believe that its assumption was so unwarranted as to render the answer of the physician, incompetent.

Appellee further complains that the employer did not have any notice or knowledge of the alleged injury within ninety days after the accident occurred as required by the Act of June 2, 1915, P. L. 736, Art. 3 Sec. 311, as amended by the Act of April 13, 1927 P. L. 186, Sec. 3, 77 PS §631. The testimony shows that on March 9, on the day after decedent's death, at the home of the decedent, that Walter Boehm notified Mr. C. L. Donahower, the manager of the defendant company, that a fight had occurred at the Armour's plant and that Mr. Donahower agreed to investigate. Mr. Donahower when called admitted that he had a conversation with Mr. Boehm about something which had happened at the plant but upon investigation he could discover nothing and did not learn that the decedent had received any injury until he was notified by the insurance investigator about two months after the death of the decedent. At the time of the altercation or scuffle, Anthony Muskunus, who was the night foreman of the plant, knew of the altercation and scuffle because it was he who separated them while they were on the floor. In addition, Jacob Goldberg, who was the manager of the meat department under the supervision of Mr. Donahower, testified that he had learned about the fight and investigated it but was unable to find whether decedent was injured as a result of the

fight. Under these circumstances, we believe sufficient notice or knowledge was received by the employer to comply with the spirit and the intent of the above provision.

The judgment of the court below is reversed and the record is remitted with instructions to enter judgment upon the award.