WILLIAMS, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

(Decided March 20, 1939.)

*Mr. James Harrington Boyd,* for appellee.
*Mr. Percy R. Taylor,* for appellant.

LLOYD, J. On May 15, 1937, and theretofore, Courtney Williams was in the employ of the Toledo Chamber of Commerce as head porter and as such was authorized to employ an assistant porter as occasion and necessity might require. On the evening of the above-mentioned date an organization described in the bill of exceptions as The N. Y. C. Lions Club was giving a dinner and dance at the commerce club. Williams was in charge of arranging the tables and chairs for the dinner and later of removing them and waxing the floor, which was to be used for dancing. He had hired Vernon Dunbar as assistant porter to help him in the discharge of his duties.

The evidence discloses that after Williams had waxed the floor, his assistant, Dunbar, not knowing perhaps that this had been done, proceeded again to spread powdered wax upon the floor. Williams, observing Dunbar doing this, stopped him, saying, ''don't put any wax on,'' and ''snatched the can of wax'' out of his hand. Dunbar is the only witness who saw or knew anything about what thereafter happened. He testified that they then left the room where the dinner dance was being held and where they were at work and ''walked out into the hall together.'' Then ensued what started as a friendly scuffle but which became a fight in earnest, resulting in the death of Williams from peritonitis caused by a pocketknife wound inflicted by Dunbar. The story of the happening, as related by Dunbar, is as follows:

"Direct examination:

"Q. You were in the auditorium when he came in? A. That is right.

"Q. What did he do? A. Snatched the can of wax out of my hand.

"Q. What did you do? A. Courtney and I walked into the corridor near the orchestra pit and I told him he shouldn't have done it and we started boxing and after a while we began to hit harder. I imagine each one hit a little harder. Stung it up. I know it stung me. We were in for a real fight. He motioned at me with the can and I took the can and came up the hall and I hit him in the right eye and he fell back towards the glass on the east side, I would say, and that is when I reached and got the knife and told him 'don't come on me' and he rushed me. I had the knife to my side and didn't intend to stab, in fact, I didn't know he was stabbed until later.

"Q. He rushed you? A. Yes.

"Q. That was after you hit him in the eye? A. Yes, he rushed me and I had it here and knocked him back. I opened it and said 'don't come on me' and felt as though it just merely stung through the cloth, didn't pull it one way or another, and folded it up and put it in my pocket.

"Cross-examination:

"Q. You waxed the floor or started to wax the floor and what happened? A. He stopped me.

"Q. Did he say anything to you? A. Yes, he told me 'don't put any wax on.'

"Q. Then what happened? A. We walked out in the hall together, he and I.

"Q. Was anything said? A. Yes, I told him he shouldn't have done that.

"Q. What did he say? A. I don't remember.

"Q. Then what happened? A. We started boxing.

"Q. Have anything on your fists? A. No.

"Q. In other words, you were really fighting? A. No, not then.

"Q. Who struck first? A. Courtney, that is when we started boxing.

"Q. Who struck the first blow? A. Courtney.

"Q. Did he land the first blow? A. Yes.

"Q. What did you do? A. Hit him back.

"Q. Did this fight start out in fun? A. Started out in fun.

"Q. Who started this fun fight? A. Courtney.

"Q. Then the fight gradually grew more serious? A. That is right.

"Q. Began striking harder and harder? A. That is right.

"Q. Until you were really fighting? A. Yes.

"Q. Did he in any way bruise your body? A. I had a few bruises on my face.

"Q. At the time you were fighting, were you angry with Courtney? A. No.

"Q. Was he angry with you? A. No.

"Q. Not even when you were striking those hard blows? A. Quite naturally.

"Q. You were angry at that time? A. Yes.

"Q. Did Courtney Williams take anything in his hand at that time? A. He already had the can of wax in his hand.

"Q. Do anything with the can of wax? A. He threw that at the first, at me.

"Q. Did he hit you? A. No.

"Q. Where did that happen? A. In the corridor.

"Q. Do you know whether he was angry at the time he threw the can? A. I really don't think he was.

"Q. In other words, you were playing around, horse play, what you term horse play? A. Yes."

The evidence discloses that both Williams and Dunbar had been drinking whiskey that evening, which may or may not have had something to do with the occurrence.

Hattie Williams applied to the Industrial Commission for compensation for the death of her husband Courtney Williams. Her application was denied and her application for rehearing was also denied. On the trial of her appeal to the Court of Common Pleas a verdict was returned in her favor and judgment rendered thereon. At the conclusion of the evidence the commission moved the court to direct a verdict in its favor, which was overruled. Motions for a new trial and for judgment notwithstanding the verdict were likewise overruled. The Industrial Commission appeals to this court on question of law.

Reverting to the evidence, it clearly shows that the fisticuff match started in jest and ended in earnest and that it was instigated and commenced by Williams and that the cause of William's injury, which resulted in his death, was entirely outside of and disconnected from the business in which he was employed.

Under the authority of *Industrial Commission* v. *Weigandt,* 102 Ohio St., 1, 130 N. E., 38; *Industrial Commission* v. *Bankes,* 127 Ohio St., 517, 189 N. E., 437, and *Highway Oil Co.* v. *State, ex rel. Bricker,* 130 Ohio St., 175, 198 N. E., 276, it is conclusively clear that the trial court should have directed a verdict for the appellant Industrial Commission. Failing to do so, it should have granted the motion of appellant for a judgment notwithstanding the verdict.

The judgment of that court is therefore reversed and final judgment rendered for the appellant.

*Judgment reversed.*

CARPENTER and OVERMYER, JJ., concur.