[S. F. No. 18366. In Bank. Mar. 25, 1952.]

STATE COMPENSATION INSURANCE FUND et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMIS- SION, PAUL J. HULL, Respondents.

Donald Gallagher and Royle A. Carter for Petitioners.

Edmund J. Thomas, Jr., T. Groezinger, Robert Ball, P. H. McCarthy, Jr., F. Nason O'Hara, Herbert S. Johnson and Alfred C. Skaife for Respondents.

CARTER, J.—Compensation was awarded to Paul J. Hull under the workmen's compensation law. The employer and his insurance carrier seek to have the award annulled.

Hull was employed as an oiler on road construction work west of Woodland, California. He had been working about three and a half days with an outfit of which William Hoover was foreman. While they were at work Hoover walked past Hull to a truck driver and directed the latter to tell Hull to help load a caterpillar. Hull received confirmation of the order by calling across to Hoover. Later Hull approached Hoover and inquired why he didn't give him a direct order instead of relaying it through the truck driver. Hoover asked, "What's the matter, don't you like your job?" Hull said he didn't mind the job, but he wanted to be talked to as man to man. Asked if he wanted to quit, Hull said he did

not, but thought "it was a - - - way" to give an order after-walking past him face to face. According to Hoover, Hull called him a bad name. Hoover told him he'd better take off his glasses if he was going to talk like that, to which Hull replied that he didn't need to remove them, and he "swung" at Hoover. He "missed" but a fight ensued in which he was hit several times by Hoover. He received injuries which incapacitated him for a period of about 10 days and required medical treatment and dental work.

The commission's first order was a denial of compensation based on the finding that Hull was the aggressor in the fight. A petition for rehearing was granted by the commission to reconsider whether Hull was the aggressor and if so, whether an aggressor injured in an argument arising out of the employment was entitled to an award of compensation under the workmen's compensation law of this state. In its order on rehearing the commission found that Hull sustained injury occurring in the course of and arising out of the employment in an altercation in which he was the aggressor. An award of $8.57 temporary disability and an additional award to cover the cost of medical and dental treatment followed.

The petitioners challenge the validity of the award on the ground that it is contrary to the decisions of the Industrial Accident Commission from the beginning of operation of the governing law in this state and contrary to definite intimations of this court in harmony with the decisions of the commission. The respondents concede that their present position is contrary to former decisions of the commission and of statements of this court, but they assert that "the modern trend" in industrial accident cases is to award compensation "irrespective of fault" and that although an aggressor may be at fault he is nevertheless entitled to compensation.

■ The workmen's compensation law as declared in the Constitution and statutes compels affirmance of the award. The Constitution confers upon the Legislature power to establish a system of workmen's compensation and create and enforce a liability on employers to compensate their workmen for injury sustained in the course of their employment "irrespective of the *fault of any party*." (Italics added.) (Cal. Const., art. XX, § 21.) The only requirements of the statute are, that to be compensable, an injury must "arise out of" and "occur in the course of" the employment. (Lab. Code, § 3600.) That is to say the employee

must be engaged in some activity growing out of and incidental to his employment at the time he suffers an injury in order to be entitled to compensation under the workmen's compensation law. It cannot be doubted that a dispute between an employee and his superior in regard to the latter's treatment of the former in their relations as boss and worker is incidental to the employment. There is no doubt that the injury occurred in the course of the employment, for that has reference ordinarily to time and place. Hull has satisfied both aspects. The crucial issue is whether it "arose out of" the employment, and that poses the question of whether there is a causal connection between the employment and the injury. That that is the only issue follows from the Workmen's Compensation Act which excludes fault and contributory negligence of the employee and assumption of risk as defenses. That is the *express* declaration of the Constitution and statutes relating to workmen's compensation. Indeed the statute compels that result inasmuch as it declares that "serious and wilful misconduct" on the part of the employee does not defeat his recovery; it merely cuts it in half, and not even that under certain conditions (Lab. Code, § 4551), thus indicating clearly that misconduct on his part is not a defense. Hence the charge of aggressor cannot be a defense, for it is nothing more than an assertion that the employee was at fault —was to blame—brought it on himself.

These principles, including the negation of a requirement that the employee is doing something for his employer's benefit, were clearly stated by this court in the recent case of *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.*, 26 Cal.2d 286 [158 P.2d 9, 159 A.L.R. 313], where we abandoned the long standing rule in this state that the victim of "horseplay" was not entitled to compensation. The logic of that case is here compelling. We said: "As grounds for annulling the award, the insurer contends that, although the applicant's injury occurred in the course of her employment, it did not arise 'out of' her employment and, accordingly, is not a compensable injury within the jurisdiction of the Industrial Accident Commission. . . . *'It is not indispensable to recovery, however, that the employee be rendering a service to his employer at the time of the injury.* [Citations.] The essential prerequisite to compensation is that danger from which the injury results be one to which he is exposed as an employee in his particular employment.' . . . The petitioner concedes

that if skylarking was customary and condoned by the employer . . . or if, under similar circumstances, Miss Carmel had been injured through an altercation between fellow employees over their work . . . she would be entitled to compensation. *These judicial distinctions lack realism. . . . Certainly, a classification of assaults and altercations as incidental to employment, but placing accidents caused by playfulness and frolicking, in which the injured employee took no part and of which he had no knowledge, in the category of those not 'proximately caused by the employment,' has no sound basis in law or in fact. . . .* Considering, as we may, the propensities and tendencies of mankind and the ordinary habits of life, it must be admitted that wherever human beings congregate, either at work or at play, there is some frolicking and horseplay. Accordingly, an injury sustained by a nonparticipating employee through the horseplay of fellow workers arises 'out of' and 'is proximately caused by the employment' within the meaning of section 3600 of the Labor Code.'' (Italics added.) More recently this court dealt with the question of whether on the basis of *respondeat superior* an employer was liable for an assault by his employee on another workman, although he was the aggressor. In *Carr v. Wm. C. Crowell Co.,* 28 Cal.2d 652 [171 P.2d 5], the employee, following a dispute over work, threw a hammer and struck plaintiff with it. Plaintiff was another workman but not for the same employer. It was held that the assault was in the course of the employment, for it arose out of a dispute about the work being performed. We said: ''Defendant contends that Enloe was not acting in the scope of his employment when he injured plaintiff, on the grounds that the throwing of the hammer did not further defendant's interests as an employer and that Enloe could not have intended by his conduct to further such interests. *It is sufficient, however, if the injury resulted from a dispute arising out of the employment.* Under the provisions of section 2338 of the Civil Code a principal is liable for 'wrongful acts' of his agent committed 'in and as a part of' the principal's business. *'It is not necessary that the assault should have been made ''as a means, or for the purpose of performing the work he (the employee) was employed to do.'' '* . . . Such associations 'include the faults and derelictions of human beings as well as their virtues and obediences. Men do not discard their personal qualities when they go to work. Into the job they carry their intelligence, skill, habits of care and rectitude. Just as inevi-

tably they take along also their tendencies to carelessness and camaraderie, *as well as emotional make-up.* In bringing men together, work brings these qualities together, causes *frictions* between them, creates occasions for lapses into carelessness, and for fun-making and *emotional flare-up.* Work could not go on if men became automatons repressed in every natural expression. . . . *These expressions of human nature are incidents inseparable from working together. They involve risks of injury and these risks are inherent in the working environment.'* (*Hartford Acc. & Indem. Co.* v. *Cardillo,* 72 App.D.C. 52 [112 F.2d 11, 15].)'' (Italics added.) Certainly if for the purposes of *respondeat superior* an employee is acting within the scope of his employment when committing an assault arising from a dispute as to his work because it is incidental to employment, it must follow that an injury he sustains while committing the assault is also within the course of his employment and incidental to it and compensable, especially when we remember that the workmen's compensation laws must be liberally construed in favor of the employee. (Lab. Code, § 3202.) The Carr case was followed by *Fields* v. *Sanders,* 29 Cal.2d 834 [180 P.2d 684, 172 A.L.R. 525], where the employer was held liable for an assault by his truck driver employee resulting from an altercation following a collision. We held the assault to be in the scope of the employment.

It should be noted that in the Carr case the court cited and quoted with approval from *Hartford Acc. & Indem Co.* v. *Cardillo,* 72 App.D.C. 52 [112 F.2d 11], cert. den. 310 U.S. 649 [60 S.Ct. 1100, 84 L.Ed. 1415] (see portion of Carr case last quoted above). The Hartford case was written by Judge Rutledge, later an Associate Justice of the Supreme Court of the United States, and involved the issue of whether an employee who was assaulted because of vile language he used arising out of a work dispute could recover workmen's compensation under the Longshoremen's & Harbor Workers' Compensation Act. The court in an illuminating discussion held he could, stating: ''No common denominator for the cases can be found in the nature of the specific act or event which is the immediate cause of the injury. Whether it is 'natural' or abnormal, occurs on or off the employer's premises, consists in the action of physical or human agencies and, if the latter, is reflex or volitional, lawful or unlawful, by one deranged or responsible, the common element is to be found in

a broader and more fundamental principle. It is stated by Cardozo, J., in *Leonbruno* v. *Champlain Silk Mills* (1920), 229 N.Y. 470 [128 N.E. 711, 13 A.L.R. 522], as follows: 'The claimant was injured, not merely while he was in a factory, but because he was in a factory, in touch with associations and conditions inseparable from factory life.' Not the particular or peculiar character of the associations and conditions, but that the work creates and surrounds the employee with them is the basic thing.

"Nor is it necessary, as these cases show, that the particular act or event which is the immediate cause of the injury be itself a part of any work done for the employer by the claimant or others. Otherwise no award could be given for many injuries now compensated, such as those caused by stray bullets, unexplained falls, objects falling from outside the employer's premises and work, many street risks, horseplay, most assaults and many other causes. 'The risks of injury incurred in the crowded contacts of the factory through the acts of fellow workmen are not measured by the tendency of such acts to serve the master's business.' Not that the act is in the line of duty, or forwards the work, or creates special risk, but that the work brings the employee within its peril makes it, for purposes of compensation, 'part of the work.'

"Recognition that this is so came more easily as to physical than as to human forces. As with street risks, the early disposition in cases of human action was to emphasize the particular act and its nature, except anomalously when it involved merely negligence of the claimant or fellow employees. The statutory abolition of common law defenses made easy recognition of the accidental character of negligent acts by the claimant and fellow servants. The extension to their accidental (i. e., non-culpable, but injurious) behavior was not difficult. So with that of strangers, including assault by deranged persons, and their negligence intruding into the working environment. But these extensions required a shift in the emphasis from the particular act and its tendency to forward the work to its part as a factor in the general working environment. The shift involved recognition that the environment includes associations as well as conditions, and that associations include the faults and derelictions of human beings as well as their virtues and obediences. Men do not discard their personal qualities when they go to work. Into the job they carry their intelligence, skill, habits of care and rectitude. Just as inevitably they take along also their ten-

dencies to carelessness and camaraderie, as well as emotional make-up. *In bringing men together, work brings these qualities together, causes frictions between them, creates occasions for lapses into carelessness, and for fun-making and emotional flare-up.* Work could not go on if men became automatons repressed in every natural expression. 'Old Man River' is a part of loading steamboats. These expressions of human nature are incidents inseparable from working together. They involve risks of injury and these risks are inherent in the working environment.

"But resistance to application of the broad and basic principle has been most obstinate perhaps where the particular act immediately causing injury involves *responsible volition by the claimant* or others. The extreme instances are those containing an element of illegality or criminality. The horseplay and assault cases are illustrative. Confusion and conflict still reign in these realms.

"Several factors have sustained the resistance. One is the hangover from common law conceptions of profiting by one's own wrong. But this applies as well, in logic, to contributory or one's own exclusive negligence. Another was the now thoroughly dissipated notion that voluntary responsible action cannot be accidental. The volitional character of the act also raised a supposed analogy to 'independent, intervening agency' in tort causation. There was, further, an assumed essential opposition between 'personal' acts and those of an 'official' (i. e., related to the work) character. An assault necessarily involves emotional make-up and disturbance. In a broad sense nothing is more personal. Quarreling is always so. This accounts for the early disposition to regard all injuries from wilful assault as not compensable, a view also necessarily dictated, except rarely when duty requires fighting, if tendency of the particular act to forward the work or direct connection with line of duty are the tests of liability. But that view now is repudiated universally in recognition that work causes quarrels and fights. *That they involve volition and fault, have no tendency to forward the work, and are permeated with the personal element of anger no longer suffices to break the causal connection between work and injury.* Emotional disturbance is not of itself an 'independent, intervening cause' or a 'departure from the work.'

"But differences remain as to when work causes quarrels. So long as the claimant is merely the victim, not a participant,

it makes little difference whether the fighting is by fellow employees or strangers to the work or what is the immediate occasion for the dispute. The same is true in horseplay. It is sufficient that the work brings the claimant within the range of peril by requiring his presence there when it strikes. But conflict becomes acute when the claimant participates. There are two lines of division, which partially overlap. One is concerned with whether the claimant is the aggressor. Another turns on whether the dispute arises immediately over the work or about something else. One view limits compensable causation to quarrels relating directly to the work. It disconnects the precipitating incident from the working environment, though that alone may have produced it. So isolated, its immediate relevance to the work becomes the determinative consideration. Momentary lapses from duty, as in horseplay, kidding and teasing, which often explode into bursts of temper and fighting become 'departures from the work,' 'independent, intervening causes' or 'purely personal matters.' Their immediate irrelevance overcomes and nullifies the part played by the work in bringing the men together and creating the occasion for the lapse or outburst. The other view rejects the test of immediate relevancy of the culminating incident. That is regarded, not as an isolated event, but as part and parcel of the working environment, whether related directly to the job or to something which is a by-product of the association. This view recognizes that work places men under strains and fatigue from human and mechanical impacts, creating frictions which explode in myriads of ways, only some of which are immediately relevant to their tasks. Personal animosities are created by working together on the assembly or in traffic. Others initiated outside the job are magnified to the breaking point by its compelled contacts. No worker is immune to these pressures, and impacts upon temperament. They accumulate and explode over incidents trivial and important, personal and official. But the explosion point is merely the culmination of the antecedent pressures. That it is not relevant to the immediate task, *involves a lapse from duty, or contains an element of volition or illegality does not disconnect it from them nor nullify their causal effect in producing its injurious consequences. Any other view would reintroduce the conceptions of contributory fault, action in the line of duty, nonaccidental character of voluntary conduct, and independent, intervening cause as applied in tort law, which it was the purpose of the*

*statute to discard.* It would require the application of different basic tests of liability for injuries caused by volitional conduct of the claimant and those resulting from negligent action, mechanical causes and the volitional activities of others.

"The limitation, of course, is that the accumulated pressures must be attributable in substantial part to the working environment. This implies that their causal effect shall not be overpowered and nullified by influences originating entirely outside the working relation and ,not substantially magnified by it. Whether such influences have annulling effect upon those of the environment ordinarily is the crucial issue. The difference generally is as to the applicable standard. It is not, as is frequently assumed, the law of 'independent, intervening agency' applied in tort cases. It cannot be prescribed in meticulous detail, but is set forth in the statute, not only in the broad presumptions created in favor of compensability, but more explicitly in the provision by which Congress has expressed clearly its intention concerning the kinds of acts which bar recovery when done by the claimant. The provision is: 'No compensation shall be payable if the injury was occasioned *solely* by the intoxication of the employee or by *the willful intention of the employee to injure or kill himself or another.*' (Italics supplied.)

"This provision, reinforced by the statutory presumptions and the Act's fundamental policy in departing from fault as the basis of liability and of defense, except as specified, is inconsistent with any notion that recovery is barred by misconduct which amounts to no more than temporary lapse from duty, conduct immediately irrelevant to the job, contributory negligence, fault, illegality, etc., unless it amounts to the kind and degree of misconduct prescribed in definite terms by the Act. It is entirely *inconsistent with reading into the statute the law of tort causation* and defense, where liability is predicated on fault and nullified by contributory fault." (Italics added.)

The modern trend is in accord. (*Stark* v. *State Ind. Acc. Com.,* 103 Ore. 80 [204 P. 151] ; *Stulginski* v. *Waterbury Rolling Mills Co.,* 124 Conn. 355 [199 A. 653] ; *Commissioner of Taxation & Finance* v. *Bronx Hospital,* 276 App.Div. 708 [97 N.Y.S.2d 120] ; *Dillon's Case,* 324 Mass. 102 [85 N.E.2d 69] ; see cases collected 41 Ill.L.Rev. 354-363; *Forty Years of American Workmen's Compensation,* Stefan A. Riesenfeld, Professor of Law, University of Minnesota (1951), 35 Minn.L.

Rev. 525-548.) Many writers on the subject have taken the same position (*Assaults and Horseplay under Workmen's Compensation Laws*, Samuel B. Horovitz, 41 Ill.L.Rev. 311; Current Trends in Workmen's Compensation, Samuel B. Horovitz (1947), p. 532.) In the above writings Mr. Horovitz ably presents the problem. At page 343 et seq. of 41 Ill.L.Rev. he says: ''Why should it make any legal difference under the compensation law whether the injured party was the aggressor? Certainly, no compensation statute expressly gives the employer the defense of 'aggressor.'

''Is there some good reason why so many courts, without knowing exactly why they do it, deny recovery to all types of aggressors? Where the aggression is deliberate and by murderous means, the reason is apparent. Assume that a quarrel starts on Monday over work tools. Tuesday one employee, still angered over that argument, steals up on the other and attempts to kill him with a hatchet, and instead trips and injures himself, or is killed by the intended victim in self-defense. The quarrel having its origin in a fight over tools, arises out of the employment.

''If he is to be denied compensation, it must, therefore, be on some other ground. Most acts supply that ground, by expressly providing that there shall be no recovery where the claimant is guilty of serious and wilful misconduct, or of wilful intention to injure or kill himself or another, or similar enactments. Certainly a deliberate hatchet-murder, attempted the following day when the excuse of high passion is gone, falls within the express exception, and no recovery is possible.

''But no such wilful intention or wilful misconduct can be spelled out of every aggressive act. A playful push, an angry curse, or even an impulsive punch with a fist is not what legislatures intended to punish, by depriving workers of compensation. And the burden of proof of such serious and wilful misconduct, or wilful intention to injure or any similar defense, is upon the employer or insurer. Where the board, commission or court does not expressly find such violation, what right has the court to read in a new exception for 'aggressors'? Why rule out negligence, contributory negligence, assumption of risk, etc., in all other types of compensation cases, and leave it in for assaults?

''Wilful misconduct or wilful intention to injure another usually denotes premeditated or deliberate misconduct. Serious and wilful misconduct does not cover misconduct which is trivial, no matter how grave the result, or misconduct which

is not intentional, e. g., misconduct which is impulsive, or inadvertent, or thoughtless, or as the result of an instinctive act. . . .

"Many assaults result from impulsive, thoughtless or unintentional acts, often trivial in origin, although the result may be serious or even fatal. The 'explosive point is merely the culmination of antecedent pressures' in many instances. A worker tells his foreman he wishes to quit the gang and that the foreman is prejudiced against him. One word leads to another, and fists fly. *To create an artificial rule* that he whose fist first made contact is an aggressor (and can never recover, even though the first fist did no harm, whereas the second fist permanently injured the fellow worker), *is to forget the legislative command that injuries arising out of the employment be compensated, short of wilful misconduct or similar provisions.* And where the quarrel had its origin in the work or work-environment and was short of wilful misconduct, or short of any express defense in the act, *how can the court justify their own judicially-created defenses?* How are they justified in bringing into the compensation act the discarded principles of the common law as to contributory fault, independent intervening cause, and the like? That these tort theories have been discarded is too well recognized for further modern argument. That there is a *natural repugnancy to help a guilty party is no excuse for relieving industry of a liability and placing it on the worker or charity.*

"The moment courts properly admit that, for the non-aggressor, an assault, malicious or sportive, arises out of the employment, that the *same assault necessarily arises out of the employment for the aggressor.* It is the *character and nature of the assault which determines* whether it arises out of the employment, not the culpability or lack of culpability of the parties involved. It is the *assault itself which arises out of the employment; and who initiates the altercation has no bearing* on that question, relates to *common law culpability* considerations, and is of *importance only in considering the legislative defense of wilful misconduct and the like."* (Italics added.)

Mr. William R. Schneider, in analyzing the cases states that the weight of authority supports the propositions that (1) assaults arising out of controversies over the manner and method of performing work are compensable as a general proposition, but may not be if the injured employee initiated the assault.

(2) Those arising from personal animosity are not. (3) the aggressor in the assault may not recover. (Schneider, Workmen's Compensation Text [Perm. ed.] § 1560.) There is no basis for distinguishing between the case where the employee initiated the assault and where he did not or that of an aggressor and nonaggressor, except in one the employee is at fault and in the other he is not. As seen, this cannot be a valid distinction, because the fault of the employee is no bar to recovery unless it is serious and wilful misconduct and then only to the extent of one half the compensation, and not at all if the employee is killed, suffers 70 per cent or more disability, was under 16 years of age, or the employer failed to comply with a safety regulation. (Lab. Code, § 4551.)

The contention is made that considerations of public policy require that recovery be denied in cases where the employee is injured while engaged in the violation of a penal statute, because, to allow recovery in such a case, would permit a person to benefit by his own wrong. That appears to be the real basis of many of the decisions denying recovery. The effect of such a holding is to deny recovery because of the fault of the employee contrary to the express provisions of the Constitution and statutes relating to workmen's compensation. The question of policy is for the people and the Legislature in the first instance and here they have spoken in no uncertain language, saying that fault, serious and wilful misconduct, and contributory negligence do not bar recovery. Hence to the extent such action by the employee is within a ''wrong'' by which he may not ordinarily benefit, the policy declared is that he may so benefit.

In the same connection, fear has been expressed that workmen will receive compensation for injuries suffered while committing a serious crime and who may be imprisoned for the offense. This fear is unfounded. Situations are conceivable where all would probably agree that compensation should be awarded even though a crime was committed. Take the case where an employee is injured while driving a car with defective brakes or without lights at night while engaged in conducting his employer's business or is required to make fast deliveries and so operates it that he is guilty of speeding, reckless driving, or even manslaughter. There may be cases in which a crime (e. g., murder) is committed where the criminal act may not be said to be reasonably related to the employment—is not within the realm of those acts which may arise out of emotional conflicts engendered by frictions in

employment. When such a case is presented it can be decided on its facts without violating sound rules of construction of the constitutional and statutory provisions relating to workmen's compensation. Rather than attempt to state a general rule with exact boundaries, the court should meet each case as it arises. Clearly, a simple assault, such as here involved is not outside the boundary or in the category of an act having no reasonable connection with the employment.

The dictum contrary to the foregoing in *Globe Indemnity Co.* v. *Industrial Acc. Com.*, 193 Cal. 470 [225 P. 273] and *Globe Indemnity Co.* v. *Industrial Acc. Com.*, 2 Cal.2d 8 [37 P.2d 1039], is disapproved.

The award is affirmed.

Gibson, C. J., and Traynor, J., concurred.

Edmonds, J., concurred in the judgment.

SHENK, J.—I dissent. The crucial issue is conceded to be whether the injury "arose out of" the employment. The majority assumes to settle the question by the observation that the Constitution declares that injury so sustained shall be deemed compensable "irrespective of the fault of any party"; that since aggression is fault, it is therefore not a defense. This oversimplified solution is contrary to established state policy and decisional law.

The holding in *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.*, 26 Cal.2d 286 [158 P.2d 9, 159 A.L.R. 313], does not sustain the proposition. As the majority opinion points out, the court there abandoned the long existing rule that the nonparticipating "victim" of horseplay was not entitled to compensation. Here we are dealing with the aggressor, not his victim. Nor is reference to the result under the doctrine of *respondeat superior* in point. There again the injuries to another person are involved. In my opinion the words "without the fault of any party" apply, as the Constitution indicates, *after* it is determined that the injury arises out of the employment. As the opinion concedes, an aggressive act has not uniformly been deemed to be an act coupled with and therefore arising out of employment. On the contrary the weight of authority has supported and still supports the view that an aggressor has stepped aside from his employment and at least as to his own injuries is not within the purview of the compensation acts.

It is true that the salutary provisions of workmen's compensation laws in this state and elsewhere generally have abolished the rule of assumption of risk, the fellow servant doctrine and contributory negligence as defenses in proceedings in behalf of an injured workman. But it does not follow that all other defenses have been abolished.

Regardless of the seemingly broad and all-inclusive language of our constitutional provision as an enabling act, it has always been recognized that certain facts must be established and conditions found to exist before the compensation law may be invoked. It is essential that the relationship of employer and employee be present at the time of the injury. It is also essential that the injuries must have been sustained by the workmen "in the course of their employment." (Const., art. XX, § 21.) In the exercise of its plenary power the Legislature has imposed other conditions on the right of an employee to receive compensation from his employer. Section 3600 of the Labor Code requires (a) that both the employer and the employee be subject to the compensation provisions of the code; (b) that, at the time of the injury, the employee be performing services growing out of and incidental to his employment and be acting within the course of his employment; (c) that the injury be proximately caused by the employment, either with or without negligence; (d) that the injury be not caused by the intoxication of the injured employee; or (e) that the injury be not intentionally self-inflicted.

The incidents of employment relationship and "course of employment" requirements of subdivisions (a), (b) and (c) cannot be seriously questioned; and the prohibitions against compensation, notwithstanding the concurrence of all other requirements, contained in subdivisions (d) and (e) have never been successfully attacked.

Furthermore section 4551 of the Labor Code denies compensation as to one half where the employee is guilty of serious and wilful misconduct.

No one may rightfully question the power of the Legislature to place proper restrictions on the right to compensation subject of course to the constitutional provisions. Whether an "aggressor" should be entitled to compensation and the extent if any to which he may be so entitled is a question of public policy, a subject on which the Legislature might well provide appropriate regulations. The fact that it has not done so may be accounted for by the fact that in the

history of the interpretation of the applicable law in this state both by decisions of the commission and by language of this court, the rule has invariably been to deny compensation to the "aggressor" in assault cases.

In view of that history, interpretation and long standing public policy, it is not the province of this court to lay down a rule that an aggressor should be entitled to compensation under any and all circumstances. The offense might be of such a nature as to exclude the conduct of the aggressor-employee from consideration as action within the course of his employment. Such conduct might be in violation of some penal law of the state involving conduct *malum in se* and of the most flagrant nature. It might even result in murder. In such a case, if the commission's position be sustained, the perpetrator of the crime could be receiving compensation while confined in state's prison for the offense. Liberal construction of compensation laws should not go the length now established by the majority decision as the policy of the state that an aggressor should receive compensation benefits. It certainly should not be the rule that an employee committing a criminal assault on another should be deemed to be acting for his employer for the purpose of collecting from him compensation for injuries which he sustained as a result of his own criminal act. Whether the aggressor-employee's conduct would constitute such a penal offense as to entitle him to or exclude him from compensation should be determined in accordance with some legislative guide. If the acts of the aggressor-employee amount to serious and wilful misconduct compensation to the extent of one half may in a proper case be awarded as provided by section 4551 of the Labor Code. But it has never been held that regardless of the seriousness of the offense, the offender is entitled to compensation—one half or at all.

The decisions of the commission which have denied compensation to the aggressor, with the sole exception of the order on rehearing in this proceeding, include the following: *Hemphill* v. *Industrial Acc. Com.*, 20 I.A.C. 110; *Sosson* v. *Industrial Acc. Com.*, 17 I.A.C. 120; *Turner* v. *Industrial Acc. Com.*, 17 I.A.C. 119; *McGuirk* v. *Frank J. Klimm Co.*, 17 I.A.C. 12; *Wilson* v. *Carter*, 14 I.A.C. 78; *Challman* v. *State Harbor Commrs.*, 9 C.C.C. 120; *Galpin* v. *Industrial Acc. Com.*, 2 C.C.C. 29.

Although an aggressor was not directly involved in *Globe Indemnity Co.* v. *Industrial Acc. Com.*, 193 Cal. 470 [225 P. 273], and *Globe Indemnity Co.* v. *Industrial Acc. Com.*, 2 Cal. 2d 8 [37 P.2d 1039], the rule of noncompensability for injuries on behalf of an aggressor established and uniformly adhered to by the commission was not questioned and was approved by implication.

Numerous authorities elsewhere disclose the prevailing view to be that a claimant who is the aggressor in an assault steps aside from his employment for a purpose of his own even though the argument which precipitates the assault is work-incited. Such cases follow the general rule (see note, 112 A.L.R. at page 1270 with citation of cases), that where the claimant is the aggressor in provoking an assault upon himself, the injury does not arise out of the employment. (*Vollmer* v. *City of Milwaukee* (1948), 254 Wis. 162 [35 N.W. 2d 304] ; *Riley* v. *Industrial Com.* (1946), 394 Ill. 126 [67 N.E.2d 172] ; *Kimbro* v. *Black & White Cab Co.* (1934), 50 Ga.App. 143 [177 S.E. 274] ; *Merkel* v. *T. A. Gillespie Co.* (1932), 10 N.J.Misc. 1081 [162 A. 250] ; *Davis* v. *Robinson,* (1932), 94 Ind.App. 104 [179 N.E. 797, 799-800] ; *Triangle Auto P. & T. Co.* v. *Industrial Com.* (1931), 346 Ill. 609 [178 N.E. 886] ; *cf. Horvath* v. *LaFond* (1943), 305 Mich. 69 [8 N.W.2d 915] ; *Williams* v. *Industrial Com.* (1939), 63 Ohio App. 66 [25 N.E.2d 313] ; *Cherry* v. *Magnolia Pet. Co.* (Tex.Com.App. 1932), 45 S.W.2d 555 ; *Fulton Bag & Cotton Mills* v. *Haynie* (1931), 43 Ga.App. 579 [159 S.E. 781] ; *Martin* v. *Sloss-Sheffield Steel & Iron Co.* (1927), 216 Ala. 500 [113 So. 578] ; *Curran* v. *Vang Const. Co.* (1926), 286 Pa. 245 [133 A. 261] ; *Stillwagon* v. *Callan Bros. Inc.* (1918), 183 App.Div. 141 [170 N.Y.S. 677] ; *Griffin* v. *A. Roberson & Son* (1916), 176 App.Div. 6 [162 N.Y.S. 313, 314].) *Carr* v. *Wm. C. Crowell Co.*, 28 Cal.2d 652 [171 P.2d 5], *Fields* v. *Sanders,* 29 Cal.2d 834 [180 P.2d 684, 172 A.L.R. 525], and similar cases are consistent with that general rule. Those cases involve the right of third parties to recover from an aggressor's employer for injuries inflicted by the aggressor while acting in the course of his employment. (*Cf. Hartford Acc. & Indem. Co.* v. *Cardillo* (1940), 72 App.D.C. 52 [112 F.2d 11], cert. den. 310 U.S. 649 [60 S.Ct. 1100, 84 L.Ed. 1415].) In those cases it was not the aggressor-employee who was seeking recovery of benefits for injuries which he received. Such cases are not in point and should not be considered to have controlling effect here.

Cases which are said to indicate a "modern trend" to compensate the aggressor for his injuries are conceded in the majority opinion not to be in accord with the weight of authority. (See *Schueller* v. *Armour & Co.* (1935), 116 Pa. Super. 323, 328 [176 A. 527]; *Traders & General Ins. Co.* v. *Mills* (Tex.Civ.App. 1937), 108 S.W.2d 219, 224; *Hartford Acc. & Indem. Co.* v. *Cardillo* (1940), 72 App.D.C. 52 [112 F.2d 11], cert. den. 310 U.S. 649 [60 S.Ct. 1100, 84 L.Ed. 1415]; *Newell* v. *Moreau* (1947), 94 N.H. 439 [55 A.2d 476, 479-480]; *Dillon's Case* (1949), 324 Mass. 102 [85 N.E.2d 69, 72]; *Commissioner of Tax. & Fin.* v. *Bronx Hospital* (1950), 276 App.Div. 708 [97 N.Y.S.2d 120, 122-123]; *cf. Stulginski* v. *Waterbury Rolling Mills Co.* (1938), 124 Conn. 355 [199 A. 653]; *Haas* v. *Brotherhood of Trans. Workers* (1945), 158 Pa.Super. 291 [44 A.2d 776, 780]; see cases collected Horovitz article, 41 Ill. Law Rev. 311, at p. 363, n. 170.) The applicable rule must necessarily depend on the law of the forum.

Because this court in *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com., supra,* 26 Cal.2d 286, overruled numerous earlier cases which denied compensation to a nonparticipating employee injured through the horseplay of a fellow worker is no reason now to disclaim adherence to the cases in this state which have impliedly approved the general rule heretofore followed by the commission in aggressor assault cases. The decision in that case may properly lead to a holding of compensability for injuries suffered by the victim of the aggressor; but it is not authority for compensating the self-provoked injuries of an aggressor. The risk that an employee may receive injuries from his own act of aggression should not be considered incidental to his employment. If the rule as heretofore established in this state is to be relaxed and recovery be authorized under circumstances which do not otherwise offend the law, the change should be made by the Legislature, not by the courts. In my opinion the award should be annulled.

Schauer, J., and Spence, J., concurred.