[Civ. No. 33021.   Second Dist., Div. Three.   Sept. 27, 1968.]

LEWIS D. LITZMANN, Petitioner, v. WORKMEN'S COM-
PENSATION APPEALS BOARD, AZUSA WESTERN,
INC. et al., Respondents.

William Jos. Hanks for Petitioner.

Everett A. Corten, Nathan Mudge, Ives, Kirwan & Dibble and Darwin L. Dibble for Respondents.

McCOY, J. pro tem.*—This is a proceeding to review and annul a decision of the Workmen's Compensation Appeals Board denying an applicant's claim for benefits. The referee, after a hearing, found that he sustained injury to his right shoulder, right upper arm, and left elbow arising out of and occurring in the course of his employment, but that the injury arose out of an altercation in which applicant was the initial physical aggressor and, therefore, he was not entitled to an award. The board denied applicant's petition for reconsideration.

The jurisdiction of this court to consider the petition for a writ of review is questioned by the answer of the appeals board, filed June 7, 1968. The petition for review now before us was date stamped and filed by the clerk of this court on April 18, 1968. The answer of the board points out that the appeals board filed and served its order denying reconsideration on March 18, 1968, and therefore, the petition was filed one day too late. Failure to file within the 30-day period provided by Labor Code, section 5950 deprives the court of jurisdiction. (*National Auto Ins. Co.* v. *Industrial Acc. Com.,* 58 Cal.App.2d 508 [136 P.2d 815]; *Alford* v. *Industrial Acc. Com.,* 28 Cal.2d 198 [169 P.2d 641].)

On June 13, 1968, on being apprised of the board's challenge to the court's jurisdiction, the petitioner's attorney filed a notice of a motion to advance the filing date of the petition for review, indicating service of the notice on respondents. On the same date this court denied the motion "without prejudice to petitioner's right to have the question raised thereby considered by the Court upon its consideration of the petition for a writ of review." It appears from the declarations in support of the motion that on April 17, 1968, the last day on which a timely petition could be filed, the petition was presented to the clerk of this court for filing, but that he refused to file it because it was not prepared in "the proper form" and on "proper size sheets," although he was

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

informed that it was the last date for filing. Respondents did not file any opposition to this motion.

Assuming the facts alleged to be true, it appears to us that, since the petition was deposited with the clerk for filing on April 17, 1968, albeit defective in form, this court may make an order that the petition be deemed to have been filed on that date. ■ There is a strong public policy in favor of hearing cases on their merits and against depriving a party of his right of appeal because of technical noncompliance in matters of form. (*Jarkieh* v. *Badagliacco,* 68 Cal.App.2d 426 [156 P.2d 969]; *Pfingst* v. *Mayer,* 93 Cal.App.2d 265 [208 P.2d 1002].) ■ The only rule that expressly deals with the requirements for filing a petition for review of industrial accident cases is rule 57, California Rules of Court. That rule contains no directions as to the form of the petition or the size of the paper on which it is to be filed, nor does it contain any direction to the clerk to reject a petition for any reason. Even if it were clear that a petition for review should comply with the form of briefs on appeal (see rule 15), the failure to so conform does not justify refusal to file on the last day for filing, any more than the failure to so conform on appeal would justify a dismissal. On appeals, a common custom is to allow a reasonable time within which to file amended briefs complying with the rules. (See *Lady* v. *Worthingham,* 55 Cal. App.2d 396 [130 P.2d 435]; *Wiersma* v. *City of Long Beach,* 32 Cal.App.2d 405 [89 P.2d 1107].)

An additional reason for excusing non-compliance with technical requirements as to the form of pleadings is found in the rule of liberal construction which this court is directed to follow in industrial accident cases. In *Mercer- Fraser Co.* v. *Industrial Acc. Com.,* 40 Cal.2d 102, 129 [251 P.2d 955], it was held that even the statutory provisions for service expressly provided by section 5954 of the Labor Code are not jurisdictional. In *Industrial Indem. Co.* v. *Industrial Acc. Com.,* 95 Cal.App.2d 443, 453 [213 P.2d 11], this court made an order that a petition for review be filed *nunc pro tunc* where the clerk received a petition for filing on the last day but did not date stamp it until the next morning, which made it appear to be untimely filed. We are satisfied that the petition was timely filed, and this court has jurisdiction to consider the case on the merits.

There is no real dispute as to the facts. Applicant, a 49-year-old truck driver, was employed by Azusa Western, Inc. on March 21, 1967. He went to the dispatch or drivers' room about

noon on that day to wait for his further orders. The drivers' room is about 10 feet long by 3 feet wide. There are two dispatcher's windows on one side, the one at which incoming drivers report, and the other at which the drivers get their further orders. At least one dispatcher was present at the time involved here. The truck drivers usually stayed in the room between assignments, talking and having coffee. There were no chairs in the room. A coffee urn (presumably furnished by the employer) was on a counter along one wall for the use of the truck drivers.

When applicant went into the room there were 11 or 12 drivers present. Applicant had a thermos in which he had put some milk and Postum which he was shaking. Charles Dean, another driver, was in the room at the time. It appeared that some of the other drivers were playing "keepaway" with Dean's pen, or at least Dean thought they were. As a result, there was some commotion in the room, during which Dean went from one truck driver to another trying to retrieve his pen. Applicant offered him a pencil, which Dean refused, saying he wanted his pen. It is a fair inference from the evidence that at this time Dean was, to say the least, annoyed, if not angry. The dispatcher then told Dean to get his truck ready to load and Dean went out to bring his truck up to the loading area. He returned to the dispatcher's room in a few minutes to get his delivery ticket for his next load and again started asking about his pen.

Just what happened next is not clear from the evidence. Applicant testified that as he went to the coffee urn to put some hot water in his cup, Dean bumped into him, causing some of the liquid in his cup to spill on his hand. Applicant then said to Dean, "Here is some coffee if you want to play," and threw some of the contents of his thermos on Dean's pants. As fairly summarized by the referee, applicant testified that he then backed up to Mr. Lelless, with whom he had been talking "to watch and see what would happen. Charles Dean sort of blew up and said he was going to teach him not to throw coffee on him. He tried to take the lid off the urn and burned his fingers and then tried to pick up the urn and burned his fingers. He then tried to scoop some of the coffee off of the counter and throw it on him, but it didn't work, and he seemed to get more and more frustrated with each failure. Then he picked up the coffee pot and emptied it on him striking his face and arm, and he was burned from his hat over the top of his right shoulder and arm to an area

about 4 inches below the elbow. He also had some on the left arm. He plucked at his shirt trying to get it off. While he was doing this, Mr. Dean doubled up his fist and said, 'I'll teach you to call me an S.O.B.' Mr. Litzmann said, 'I didn't but I will now'. Dean left.''

Dean testified that he could have bumped applicant but did not know whether he did or not; that as he walked to the door applicant said something and then threw liquid on him; that he turned away but the liquid which was hot, hit him in the back of his neck, shoulder and arm. When asked what he did then, Dean answered: ''Well, I was going to tell him off. I evidently picked up the coffee pot. I got pretty angry. I remember sitting it down, but I don't remember picking it up.'' He also testified that he did not have ''any words'' with applicant about his pen.

Leo Vejar testified that, after Dean bumped the applicant when he was pouring his coffee and while he was facing the door, applicant said to Dean, ''So you want some coffee'' and threw some on Dean's leg; that Dean hesitated and then went over to the coffee urn and the next thing the witness knew was that Dean had lifted the coffee urn and ''dumped'' its contents on the applicant, and that the coffee hit his hard hat and ran down his shoulder. The testimony of the other two witnesses, Harold Stevenson and Charles Lelless, was substantially the same as that of Vejar.

The evidence shows that the coffee in the urn had been percolating at the time of the incident, and that applicant was severely burned by the hot coffee.[1]

The referee found that applicant sustained injuries to his shoulder, arm and elbow ''arising out of and occurring in the course of his employment'' and that ''This injury arose out of an altercation in which applicant was the initial aggressor.''[2]

In his petition for reconsideration applicant contended

---

[1] The foregoing summary of the evidence is based on the transcript, since we find that the referee's summary of the evidence is not altogether accurate. For example, according to the referee's summary, Dean testified that ''he couldn't have [bumped applicant] because he was in the corner,'' whereas, as noted above, Dean actually testified that he ''could have'' bumped applicant.

[2] In his opinion on this decision the referee says: ''Based upon the testimony of the lay witnesses, injury arose out of an altercation in which applicant was the initial physical aggressor. . . . The fact that Mr. Dean responded with more force than necessary does not take away this defense.''

that what happened was "horseplay" as distinguished from an "altercation," and that there was no animosity between the applicant and Dean. In his report on this petition the referee distinguished *Argonaut Ins. Co.* v. *Workmen's Comp. App. Bd.*, 247 Cal.App.2d 669 [55 Cal.Rptr. 810], and concluded: "Accordingly, whether the injury arose out of horse play or an altercation in which the applicant was the initial physical aggressor, it would not be compensable." The board denied reconsideration, based on its review of the record and for the reasons stated by the referee, whose report it adopted and incorporated in its decision.

The applicant now contends that the evidence does not support the finding that he was an aggressor in an altercation as found by the referee. He contends that the circumstances compel a finding that he sustained the injuries in the course of horseplay condoned by the employer and therefore, even though he was a participant, he is entitled to compensation under the rule of *Arognaut Ins. Co.* v. *Workmen's Comp. App. Bd., supra,* 247 Cal.App.2d 669. He further contends that even if the circumstances establish that there was an altercation it is unreasonable to conclude that he was the aggressor inasmuch as his act was not one which would in any view put the other person in fear of physical harm.

In *State Comp. Ins. Fund* v. *Industrial Acc. Com.,* 38 Cal.2d 659 [242 P.2d 311], it was held, in accord with the modern trend, that in industrial accident cases compensation may be awarded irrespective of fault, and that even though he is at fault himself, an aggressor is nevertheless entitled to compensation under the workmen's compensation laws. The crucial issue in such cases, said the court (p. 661), "is whether it 'arose out of' the employment and that poses the question of whether there is a causal connection between the employment and the injury. That that is the only issue follows from the Workmen's Compensation Act which excludes fault and contributory negligence of the employee and assumption of risk as defenses. That is the *express* declaration of the Constitution and statutes relating to workmen's compensation. Indeed the statute compels that result inasmuch as it declares that 'serious and wilful misconduct' on the part of the employee does not defeat his recovery; it merely cuts it in half, and not even that under certain conditions (Lab. Code, § 4551), thus indicating clearly that misconduct on his part is not a defense. Hence the charge of aggressor cannot be a defense, for it is nothing more than an assertion that the

employee was at fault—was to blame—brought it on himself.'' Further, at page 669, the court said: ''That there is a *natural repugnancy to help a guilty party is no excuse for relieving industry of a liability and placing it on the worker or charity. . . .* It is the *character and nature of the assault which determines* whether it arises out of the employment, not the culpability or lack of culpability of the parties involved. It is the *assault itself which arises out of the employment*; *and who initiates the altercation has no bearing* on that question, . . .'' (Italics by the court.)

In 1961 section 3600 of the Labor Code was amended to provide an additional condition to the right to compensation reading: '' (g) Where the injury does not arise out of an altercation in which the injured employee is the initial physical aggressor.''[3] *Argonaut Ins. Co.* v. *Workmen's Comp. App. Bd.*, 247 Cal.App.2d 669 [55 Cal.Rptr. 810], appears to be the only case in which that amendment has been considered. There a 16-year-old boy was employed on a ranch which trained race horses and jockeys. On a Sunday in the dormitory for jockeys, he threw a glass of beverage at another boy. He was then chased around the place and pushed through a glass door, suffering lacerations of the arms and hands. The award of the board was affirmed. With reference to the 1961 amendment to section 3600 of the Labor Code, the court said (p. 682): ''Horseplay is distinguishable from 'altercation.' 'Altercation' indicates willingness to inflict, or the actual infliction of, bodily harm. (*Rosenthal* v. *Voy Wong,* 30 Cal. Comp. Cases 103; *Brock* v. *Shoemaker,* 23 Cal. Comp. Cases 208; *Mercy Hospital* v. *Tompkins,* 4 Cal. Comp. Cases 242.) 'Horseplay' or 'skylarking,' while it may result in bodily harm, is characterized by an absence of animosity. (*Smith* v. *Heavner, supra,* 9 Cal. Comp. Cases 160; *Klein* v. *Mitchell, supra,* 4 Cal. Comp. Cases 101; *Frandsen* v. *Rasmussen* (1916) 3 I.A.C. 84.) ''

In the case before us the referee found that the injuries arose out of and in the course of the applicant's employment. In our opinion that finding was correct. (*Argonaut Ins. Co.* v. *Workmen's Comp. App. Bd., supra,* 247 Cal.App.2d at p. 683.) At the same time we are satisfied that the evidence does

---

[3]In view of the decision in 1952 in *State Comp. Ins. Fund* v. *Industrial Acc. Com.,* 38 Cal.2d 659 [242 P.2d 311], it may be that this amendment is unconstitutional. Since that question is not raised here, there is no need for us to decide it,

not sustain the finding that the applicant was the aggressor, and that, even if it did, compensation could not be denied on that ground. (*State Comp. Ins. Fund* v. *Industrial Acc. Com., supra,* 38 Cal.2d 659.) As the court pointed out in *Argonaut Ins. Co., supra,* " 'Altercation' indicates a willingness to inflict, or the actual infliction of, bodily harm." There is no evidence here that there was any willingness or intent to inflict bodily harm on Dean, or that he actually did inflict any bodily harm on him. It also seems clear that applicant's act was characterized by an absence of animosity.

The order of the board denying applicant's petition for reconsideration is annulled and the case is remanded to the board for further proceedings consistent with the views expressed in this opinion.

Ford, P. J., and Moss, J., concured.